709 So.2d 339 (1998)
STATE of Louisiana
v.
Michael J. SCOTT and Craig L. Scott.
No. 97-KA-0028.
Court of Appeal of Louisiana, Fourth Circuit.
March 18, 1998.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for Michael J. Scott and Craig L. Scott, Defendants/Appellants.
*340 Harry Connick, District Attorney, Val M. Solino, Assistant District Attorney of Orleans Parish, New Orleans, for State /Appellee.
Before BYRNES, ARMSTRONG and MURRAY, JJ.
MURRAY, Judge.
Defendants Michael J. Scott and Craig L. Scott, through counsel, have filed an errors patent brief. Defendant Michael J. Scott has filed a pro se brief asserting that the evidence presented by the State was insufficient to support his conviction for second degree murder. For the following reasons, we affirm.

PROCEDURAL HISTORY:
Michael J. Scott and Craig L. Scott were indicted for the second degree murder of Kenneth Allen. The record indicates that numerous continuances were granted before defense counsel was determined. The record does not indicate that the men were arraigned.[1] On January 23, 1996, both men were found guilty as charged, and each subsequently was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence.

FACTS:
On May 20, 1995, at approximately 9:45 p.m., Kenneth Allen was murdered outside the apartment where he lived with his girlfriend, her five children, his sister, her four children, and her boyfriend. The apartment was located at 2627 Delachaise Street in New Orleans. Earlier that same day, Craig Scott had entered the apartment and assaulted Mr. Allen while he slept on a sofa. The police were summoned, but before an arrest warrant could be obtained for Craig Scott's arrest for aggravated assault, a second call came in indicating that a shooting had occurred. When the police arrived on the scene, Mr. Allen had been shot in the head and chest. He later died from his wounds.
Samuel Smith, the boyfriend of Kenneth Allen's sister, Thelma, testified that the first incident occurred in the late afternoon. He stated that Craig Scott, his cousin, walked into the apartment, pulled out a handgun, and pointed it at Mr. Allen. Mr. Smith was also in the living room at the time with one of Thelma Allen's sons. He testified that as Craig Scott beat and kicked Mr. Allen, he made comments about his little brother's arm being broken. Mr. Allen did not resist because of the gun being pointed at him. Craig Scott then left the apartment. The police were called, and they spoke to Mr. Allen about the incident.
According to Mr. Smith, sometime later, Craig Scott returned with his brother, Michael. Mr. Allen was outside on the sidewalk with his sister Thelma. Through a crack in the door, Mr. Smith could see Craig, Michael and Mr. Allen talking in normal tones of voice. He also saw Craig Scott holding a black handgun. Mr. Smith gathered up all of Ms. Allen's children into the apartment, and had them lie on the floor. He stated that he then looked out of the living room window, while Ms. Allen and her son, Pernell, watched from the bedroom window. He did not actually see anyone shoot Mr. Allen, but heard shots being fired. Mr. Smith stated that at no time did Mr. Allen have a gun.
Thelma Allen testified that earlier on the day of the murder Craig Scott had entered her apartment with a handgun and had proceeded to beat her brother, Kenneth. As he left, she heard Craig Scott say, "Nigger, I should kill you." She verified that Samuel Smith was in the living room with Kenneth during this incident. She was present when the police arrived and spoke with Kenneth. She stated that Kenneth was so frightened by the incident that he urinated on himself.
Sometime later, Craig Scott returned with his brother, Michael. She stated that she and Kenneth were outside the apartment when she saw the Scott brothers approach on bicycles. She tried to convince Kenneth to come inside with her, but he refused, stating that he had not done anything wrong. Thelma went inside and made the three youngest children lie down, while she and her older son went into her bedroom to watch from a window. She testified that she could see all three men from her vantage point, and that Craig and Michael were both holding guns. *341 Kenneth did not have a gun. Thelma stated that although she could not hear what the men were saying, she could see that they were arguing. She then saw Craig shoot her brother. She ducked down, and when she looked out again, she saw Michael pointing his gun at Kenneth. She heard more shots fired, but did not actually see Michael pull the trigger. After the shooting, she went outside and found her brother lying on the ground. Prior to trial, Thelma identified both Craig and Michael from a photographic lineup. She made a second positive identification of both at trial.
Pernell Allen, who was fourteen at the time of the murder, testified that he was in the kitchen when his mother came into the apartment saying that Craig and Michael were outside with guns. He first looked out of the front door, and saw Craig and Michael with guns. He then went into his mother's bedroom and watched from her window. He saw his uncle Kenneth talking with Craig and Michael. He stated that as Kenneth turned away from Craig and Michael, he saw Craig hold his gun to Kenneth's head and shoot him. Pernell ducked down and heard three to five more shots fired. He then went outside with his mother and saw Kenneth lying on the sidewalk. Pernell did not see Kenneth with a gun at any time.
Officer Chuck Badon of the NOPD testified that on May 20, 1995, he was dispatched twice to 2627 Delachaise, Apartment 2. The first call was at 6:58 p.m. Officer Badon spoke with Kenneth Allen, who told him that Craig Scott had entered the apartment where he was sleeping, and began to beat and threaten him. Mr. Allen said that Craig Scott had a gun. Officer Badon noted that Kenneth Allen appeared petrified with fright, and had urinated on himself. He stated that Thelma Allen corroborated her brother's story.
Officer Badon returned to the precinct to prepare a report and obtain an arrest warrant for Craig Scott, but before he could complete the report, another call came in at 9:16 p.m., that a shooting had occurred at the same address. When he arrived, Kenneth Allen was lying on the sidewalk in front of the apartment door in a large pool of blood. He spoke with Thelma Allen and a juvenile. They told him that the same person who had beaten Kenneth earlier that day had returned with his brother, and they shot him.
Detective Pete Brown of the NOPD Homicide Department testified that on May 20, 1996, at approximately 9:45 p.m., he was dispatched to 2627 Delachaise Street. When he arrived on the scene, the victim had already been transported to the hospital. He observed a large pool of blood and bloody clothing that had been removed from the victim by the EMTs on the sidewalk outside the apartment.
Detective Brown testified that on the night of the murder he observed fair to good lighting conditions, noting that there were lights on a telephone pole outside the apartment complex, and additional lighting over the front door of the victim's apartment. He spoke with Thelma Allen and her son, Pernell, who told him that they witnessed the shooting from inside their apartment. They estimated that the incident took place about three feet away from them, and that they saw Craig and Michael Scott shoot Kenneth Allen. Detective Brown testified that he entered the apartment and found nothing obstructing the windows from which the witnesses claimed they viewed the shooting. He stated that he did not take statements from the witnesses at that time because Ms. Allen wanted to get to the hospital. He returned on May 22, and took written statements from Ms. Allen, Pernell and Samuel Smith.
The State also offered the testimony of FBI Agent Bradley Michael who testified about the events surrounding the arrest of Craig Scott; Dr. Paul McGarry, the forensic pathologist who conducted the autopsy of Kenneth Allen; and, Officer Byron Winbush, the ballistics expert who examined the bullets removed from Mr. Allen. Officer Winbush testified that two bullets and one fragment were examined; the two whole bullets were fired from different guns, a .38 caliber and a 9 millimeter. The fragment could not be identified.
Gladys Scott testified on behalf of her two sons. She admitted that she was not familiar *342 with what happened the day of the murder because she was incarcerated on charges of child abuse. She testified that on the day before the murder, she took her two-year-old son, Hakim, to the hospital for injuries incurred from a beating. Ms. Scott denied beating her son, but rather testified that Kenneth and Thelma Allen told her they beat her son with a stick.[2] Ms. Scott testified that Kenneth Allen owned a handgun, and that he carried it whenever he left the apartment. When he was home, he kept the weapon under the mattress of the bed which they shared. Ms. Scott also refuted the testimony of Detective Brown by stating that the views from the windows in the living room and bedroom were obstructed by furniture under the windows.
On cross-examination, Ms. Scott admitted that she plead guilty to the charges of child abuse, but that she did so only to be released to be with her children. She said that one of her other sons, T-Darryl, told her that Kenneth Allen had beat her son, Hakim.
The State offered Detective Aaron Blackwell of the NOPD child abuse division as a rebuttal witness. He testified that Ms. Scott told him at the hospital that Hakim was injured in a fall in the backyard. He stated that no one was implicated by Ms. Scott as having beaten Hakim.

ERRORS PATENT:
A review of the record for errors patent fails to reflect that either Craig or Michael Scott were arraigned or entered pleas of not guilty. A failure to arraign a defendant, or the fact that a defendant did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty. La.Code Crim. Proc. art. 555. State v. Armstead, 572 So.2d 762 (La.App. 4 Cir.1990).
This record does not reflect that objections were made to any irregularities regarding arraignment and pleas prior to trial. Therefore, any irregularities were waived.
Counsel complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir.1990). Counsel's detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record. Counsel has moved to withdraw because he believes, after a conscientious review of the record, that there are no non-frivolous issues to be raised on appeal. Counsel has reviewed all available transcripts and has found no trial court rulings which arguably support the appeal. In compliance with State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241, counsel's brief indicates that he has reviewed potential assignments of error, but can find none worthy of appeal. See State v. Mouton, 95-0981 (La.4/28/95), 653 So.2d 1176. Copies of defense counsel's brief were forwarded to Craig and Michael Scott, and this Court informed them that they had the right to file a brief on their own behalf. Only Michael Scott has filed a brief.
As per State v. Benjamin, supra, this Court has also performed an independent, thorough review of all the pleadings filed in the district court, all minute entries of the district court proceedings, the bill of information and all transcripts contained in the appeal record. Craig and Michael Scott were each properly charged by grand jury indictment with a violation of La.Rev.Stat. 14:30.1, and the bill of indictment was signed by the foreman of the grand jury. Craig and Michael Scott were both present and represented by counsel at all hearings, trial, and sentencing. The sentences of life imprisonment without benefit of parole, probation or suspension of sentence are legal in all respects. The State proved every element of second degree murder beyond a reasonable doubt. An independent review reveals no non-frivolous issues, and a review of all transcripts contained in the appeal record reveals no trial court ruling which arguably supports the appeal.

DISCUSSION OF MICHAEL SCOTT'S APPEAL:
By his sole assignment of error, Michael Scott asserts that the evidence is insufficient to support his conviction for second degree murder. Specifically, he argues that the testimony *343 of the various witnesses was inconsistent.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution, but must consider the record as a whole, because that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The factfinder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, 523 So.2d at 1309-1310. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.Rev.Stat. 15:438. This is not a separate test from Jackson v. Virginia, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987). If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis falls; and, unless another one creates reasonable doubt, the defendant is guilty. State v. Captville, 448 So.2d 676 (La.1984).
Michael Scott was charged with and convicted of second degree murder which is defined in pertinent part as: "the killing of a human being: 1) when the offender has a specific intent to kill or to inflict great bodily harm." La.Rev.Stat. 14:30.1. He argues that the evidence does not support his conviction because the testimony of the witnesses was inconsistent. However, any inconsistencies in the witnesses' testimony were before the jury for its evaluation. Obviously, the jury believed the testimony of the prosecution witnesses. Factual determinations and the credibility of witnesses are matters for the trier of fact. State v. Green, 613 So.2d 263 (La.App. 4 Cir.1992).
Samuel Smith and Thelma Allen testified that after the incident involving Craig Scott earlier in the afternoon, Craig returned to the apartment with his brother, Michael. Thelma Allen observed that both brothers were carrying guns. Pernell Allen also observed that both Craig and Michael were carrying guns. From the window of her bedroom, Thelma Allen saw Craig Scott shoot her brother and Michael Scott point a gun at him. Pernell Allen saw Craig Scott shoot his uncle in the head, and then heard three to five more shots fired.
The autopsy revealed that Kenneth Allen sustained three gunshot wounds which caused his death. One of the bullets recovered from his body was fired from a .38 caliber handgun, and one was fired from a 9 millimeter handgun. The third bullet could not be identified. Officer Winbush testified the bullets could not have been fired from the same gun. Therefore, the evidence established that Kenneth Allen was shot from two different guns.
Gladys Scott testified in an attempt to provide a justification or reason for the shooting, namely, that Kenneth Allen had beaten Craig and Michael's younger brother, *344 and had caused their mother to be arrested. However, there was no credible evidence presented in support of this allegation. Nevertheless, even if Kenneth Allen had injured their brother, the evidence produced at trial, both direct and circumstantial, supports the verdict. Craig and Michael came to Kenneth Allen's home armed with guns. Thelma Allen testified that although she did not actually see Michael Scott shoot Mr. Allen, she saw Michael Scott point his gun at Mr. Allen's head. There is no evidence that Mr. Allen was armed at the time. Mr. Allen was killed by bullets from two different guns indicating that both Craig and Michael Scott shot him causing his death. Thus, the State produced sufficient evidence to support the convictions.
For the foregoing reasons, the convictions and sentences of Craig and Michael Scott are affirmed.
AFFIRMED
NOTES
[1] Failure to arraign is an error patent. It will be discussed below.
[2] A hearsay objection was entered by the State, and was sustained.