JjBAGNERIS, Judge.

STATEMENT OF THE CASE:

On July 17, 1997, the defendant was charged by bill of information with possession of more than twenty-eight and less than two hundred grams of cocaine violation of La. R.S. 40:967. He was arraigned July 28, 1997, and pled not guilty. He filed a motion to suppress which was denied November 12, 1997. A twelve member jury found him guilty as charged January 6, 1998. On March 10, 1998, he was sentenced to thirty years at hard labor. The State filed a multiple bill, accusing him of being a third offender. On April 14, 1998, the trial court found him to be a second offender, vacated the original sentence, and re-sentenced him to thirty years at hard labor without benefit of parole, probation or suspension of sentence. The defendant filed a motion for appeal which was subsequently granted by the trial court.

*744
ERRORS PATENT:

The record reveal no errors patent.

FACTS:

Officer David Walters of the Plaque-mines Parish Sheriffs Office testified he was on routine patrol in the south end of the parish on June 27, 1997. Agent Morris Roberts was traveling in another unit. The officers observed three men walking on Highway 11. Initially, the officers thought the men were traveling on the side of the road. When they got closer, the officers realized the men were walking in the middle of the road. The officers recognized the men as Spartical Brown, Robert Mitchell, and Tyrone Sellers, all known drug offenders. Upon seeing the officers, Brown began to run through the trailers on Good Rocking Lane, an area known for drug trafficking. The officers gave chase in their vehicle. Officer Walters drove to the top of the levee where he observed the weeds moving as Brown ran through them. When Brown observed Walters on'top of the levee he began to run along the bottom of the levee. Walters drove behind Brown shouting warnings for him to stop. Eventually, Walters chased Brown on foot and caught him. Roberts pulled up behind them. They patted Brown down, and | {Walters found a large bulge inside his left front pants pocket. Walters asked him what he had in the pocket, and the defendant did not answer. Walters asked him to remove it, and Brown pulled away. Walters removed the object to see whether it was a gun. It was a paper bag, and it contained “nine quarters” of what appeared to be crack cocaine. The officers arrested Brown and advised him of his rights. They issued him a citation for being a pedestrian on the lane of travel of the highway. On cross, Officer Walters testified that he had warned Brown several times about walking on the highway.
Agent Roberts repeated the story. He confirmed that the men had been warned previously about walking on the highway. He said warrants were issued for the other two men seen walking. He said that the officers had received information that Brown carried a gun.
Agent Roberts testified that the cocaine taken from Brown, weighed 57.9 grams when it was turned over to the evidence room.
Criminalist Charles Krone said that the cocaine weighed forty-four grams when he tested it. The bags the cocaine was contained in weighed approximately two grams. He said he randomly tested four of the nine packs, which is standard police procedure, and that all of the four tested positive for cocaine.
Brown testified that he was walking on the highway, but that he was walking along Good Rocking Lane when a car with tinted windows approached and picked up speed. Brown had just gotten out of jail on a charge of first degree murder of a police officer and had heard rumors the police were after him. Brown testified that he did not know who was in the car, so he ran. Brown had never been warned about walking on the roadway. He said the officers did not pat him down, and he denied possessing the bag. Officer Walters had been passing by Brown’s house on a daily basis and had told Brown “he was lucky.”
Officer Walters testified on rebuttal that he was in a marked police car. He reiterated that the car had a public address system, which he employed. He denied planting any drugs and denied threatening or harassing Brown. He said he specifically warned Brown to stay off of the highway.
| ASSIGNMENT OF ERROR ONE:
Brown argues that the trial court erred in denying his motion to suppress evidence. Specifically, he argues that the officers lacked reasonable suspicion for the stop.
In State v. Benjamin, 97-3065, p. 2-A (La.12/1/98), 722 So.2d 988, 989-990, the Louisiana Supremq Court stated:
*745 Both the United States and Louisiana Constitutions protect against unreasonable searches and seizures. The justifi-’ cation for a seizure, or “stop,” must be objectively reasonable under the “concrete factual circumstances of individual cases.” Terry v. Ohio, 892 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, (1968). In art. 215.1 of the Code of Criminal Procedure, the Louisiana legislature described the circumstances under which a police officer may stop a person as when “he reasonably suspects [the person] is committing, has committed, or is about to commit an offense.” LA.CODE CRIM. PROC. art. 215.1. If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); State v. Tucker, 626 So.2d 707 (La.1993).
This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop. State v. Belton, 441 So.2d 1195 (La.1983). This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Belton, 441 So.2d at 1198. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
Here, Officers Rome and Pollard observed that Defendant, upon seeing the marked police unit, began to run away holding his waistband as if he were supporting a weapon or contraband. These objective facts known to the officers were sufficient to raise a reasonable suspicion that Defendant either was engaging or was about to engage in criminal activity and, thus, justified a stop.
The Court of Appeal ruled that because “it is not a crime to run from the police while clutching one’s waistband,” the stop was illegal. The Court of Appeal erred. Police do not have to observe what they know to be criminal behavior before investigating. The requirement is that the officer have a reasonable suspicion of criminal activity.
Because we find that the officers had a reasonable suspicion of criminal activity on the part of Defendant, thus justifying an investigatory stop, the question of whether an “imminent stop” had occurred when Defendant abandoned [97— 3065 La. 4] firearm, as held by the Court of Appeal, is moot. We note, however, that because the seizure of the weapon was not the result of an illegal stop, Defendant’s arrest for possession of the weapon after having been convicted for armed robbery was, likewise, lawful.
Here, the defendant ran from the police officers immediately upon seeing the marked police car. The officers knew him to be a repeat drug offender and knew that he was in a high crime area where much drug trafficking occurs. Under Benjamin, it appears the court may find that the officers had reasonable suspicion to stop the defendant.
UThe officer’s subsequent frisk presents a more difficult problem. In State v. Sheehan, 97-2386 (La.App. 4 th Cir. 12/9/98), 740 So.2d 127, writ granted 99-0725 (La.7/2/99, 747 So.2d 3), an officer responded to a call from the ATF Crime Hotline. Without giving a description of the men, the caller said that a group of men standing on the corner of Barracks and Treme Streets were selling narcotics. When the officer drove to the intersection, he observed several people sitting on a step in the 1200 block of Treme Street and one man standing in front of them. The man standing noticed the police car and ran down Treme Street. The officer and his partner stopped to conduct an interview with the men. The officer asked them to put their hands on the wall so that he could perform a pat down. The partner removed a partially opened pack of cigarettes from Sheehan’s shirt pocket. In the *746 cigarette package, the agent saw crumpled cellophane in which he found a white, rock-like substance. The officer acknowledged that Sheehan did not attempt to run, and he was not observed in any illegal activity. The officer had no prior knowledge of the defendant.
The partner testified that when he and the officer responded to the complaint of drug sales at the corner of Barracks and Treme Streets, one member of the group sitting near the corner ran. The remaining men were patted down for weapons. The partner said that while he was searching Sheehan, he noticed a cigarette package in Sheehan’s shirt pocket. He searched the package for a razor blade and found crack cocaine. In searching for a razor blade, the agent described the cigarette pack as being partially opened. He looked in it and saw the small cellophane pack containing cocaine inside the package. The trial court found probable cause and denied Sheehan’s motion to suppress. This court affirmed:
At issue is whether the officers properly seized the contraband based on reasonable suspicion to make an investigatory stop of the defendant, and conduct a pat down search. A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. art. 215.1. If an officer stops a person pursuant to art. 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La. C.Cr.P. art. 215.1(B). “Reasonable suspicion” for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect’s rights. State v. Matthews, 94-2112 (La.App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819.
|KIn assessing the reasonableness of an investigatory stop', the court must balance the need to search and seize against the invasion of privacy that the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir. 1992), affirmed, in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.1993), unit denied 626 So.2d 1177 (La.1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In reviewing the totality of circumstances, the officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir.1991), writ denied 578 So.2d 131 (La.1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), certiorari denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992); State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990).
In State v. Huntley, 97-0965, p. 3 (La.3/13/98); 708 So.2d 1048, 1050, the Louisiana Supreme Court found that: “A reviewing court must take into ac *747 count the ‘totality of the circumstances — the whole picture,’ giving deference to the inferences and deductions of a trained officer that might well elude an untrained person.... The court must also weigh the circumstances known to the police ‘not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.’...”
In State v. Ganier, 591 So.2d 1328 (La.App. 4 Cir.1991), police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The juvenile saw the officers, turned “suspiciously”, began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area’s reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there. State v. Ganier, 591 So.2d at 1330. [Emphasis added.]
The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. McKinney, 93-1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120, writ denied 97-1339 (La.12/19/97), 706 So.2d 444; State v. Lambright, 525 So.2d 84 (La.App. 3 Cir.1988), writ denied 530 So.2d 83 (La.1988). Deference should be given to the experience of the | ^policemen who were present at the time of the incident. State v. Short, supva. A certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts. An officer should react for his safety under the conditions and events as they occur.
The officers relied on specific, articu-lable facts in determining whether there was reasonable cause for an investigatory stop. In the early evening of January 25,1997, the agents were dispatched following an anonymous informant’s tip just received by the ATF crime hot line. The informant stated that on a routine basis a group of males stand at Barracks Street and Treme Street and sell narcotics to passing vehicles and pedestrians. The tip was corroborated by Officer Veit and Agent Harry when they approached the intersection in their vehicle. When they saw one man standing with several people sitting on a step in the 1200 block of Treme Street, the officers’ suspicions were raised when they observed that the standing man fled. Even though the defendant himself did not flee, the action of the other subject fleeing cast a cloud of suspicion that an illegal activity was taking place.
The facts in the present case provide more than a situation where a person is stopped by a police officer just because he is on the street. It is well known to law enforcement officers that people involved in narcotics activity stay outside in the street and conduct sales to people in vehicles and pedestrians who pass by. The officer had reasonable suspicion to stop the defendant. The officers had just received a complaint of narcotic activity on the same corner. The agents and officers immediately responded to the radioed dispatch based on the tip from the ATF hot line. The officers *748 testified that the location was known as a high drug trafficking area. One of the subjects fled. Under these circumstances, the officer had reasonable suspicion to believe that the subjects were engaging in illegal activity.
In State v. Curtis, 681 So.2d 1287 (La.App. 4 Cir.1996), this court held that contraband can be seized from a pack of cigarettes. The officer reasonably suspected the subject was involved in criminal activity and could be armed. The officer was entitled to conduct a search for weapons. When the suspect reached [97-2386 La.App. 4 Cir. 7] toward his leg, the officer was justified in investigating the bulge in the suspect’s sock. Upon removing the object, the officer discovered a partially opened pack of cigarettes. The officer determined that the pack of cigarettes contained something other than cigarettes. This court found that based on the totality of circumstances, the officer had probable cause to believe that the cigarette pack contained contraband, and seizure of the contents of the cigarette pack was justified. This court noted:
Common sense dictates that a police officer should be permitted to pat-down a suspect who reasonably appears to be dealing drugs. We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop (based on reasonable suspicion) relating to drug activities. The police officers acted reasonably on information, which proved accurate. Id. at 1292.
In State v. Wartberg, 586 So.2d 627 (La.App. 4 Cir.1991), this court noted that a reasonably cautious policeman was entitled to fear that a subject who is suspected of dealing drugs could be armed and dangerous, and the officer is | .¿justified in searching for weapons for his safety and for the safety of other officers.
Because the officers stated that they had just received an anonymous tip, they were in a high crime area, and they thought that the defendant was engaging in illegal activity, in the present case the officers reasonably believed that they were in danger and that the suspect possessed a dangerous weapon so that the pat down search of the defendant was proper under La.C.Cr.P. art. 215.1; State v. Short, [97-2386 La.App. 4 Cir. 8] supra.
In the present case, when the agent was conducting a pat down search for weapons, through his sense of touch he testified that he felt a cigarette pack. From his past experience of knowing that razor blades are often concealed in cigarette packs, removing and looking at the cigarette pack was a reasonable intrusion designed to discover a weapon. In the interest of protecting himself and the other agents, Agent Harry was justified in looking inside the partially opened cigarette pack that contained something other than cigarettes. In the cigarette pack he saw crumpled cellophane that he properly opened and found a substance that looked like crack cocaine.
Based on the facts and testimony in this case, when the officer saw the substance, the officer had probable cause to believe that the object in the defendant’s pack of cigarettes was crack cocaine. There was prior justification for the officer’s intrusion into the protected area to make an investigatory stop. Under the totality of circumstances, the intrusiveness of the seizure of the contraband did not invade an expectation of privacy which society is prepared to recognize as reasonable. There was no invasion of the suspect’s privacy beyond that authorized by the officer’s search for weapons.
Sheehan, 97-2386, pp. 2-7, 740 So.2d at 129-131.
*749 The Supreme Court reversed, finding that even assuming that the police had reasonable suspicion to conduct an investigatory stop and that the close association of weapons and narcotics trafficking gave the officers an articulable basis to conduct a self-protective frisk for weapons, the seizure and search of the cigarette pack from the defendant’s shirt pocket exceeded the permissible scope of the patdown frisk sanctioned by Terry. Other cases support this conclusion.
In State v. Hunter, 375 So.2d 99, 101— 102 (La.1979), the Supreme Court explained that a police officer who has justification under La.C.Cr.P. art. 215.1(A) to stop an individual does not thereby have the right to frisk him under La.C.Cr.P. art. 215.1(B). The court stated:
"While it is true that an officer is never justified in conducting a patdown for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a pat-down for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a “reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger.” [Cites omitted]. Further, the officer’s belief is not reasonable unless the officer is “able to point to particular facts from which he reasonably lainferred that the individual was armed and dangerous.” [Cites omitted]. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a “substantial possibility” of danger.
This Court, in State v. Denis, 96-0956, pp. 7-8 (La.App. 4th Cir.3/19/97), 691 So.2d 1295, 1299, writ denied 97-1006 (La.6/20/97), 695 So.2d 1352, addressed the requirements imposed by La.C.Cr.P. art. 215.1(B) on an officer in the process of stopping a citizen. The Court recognized police have the right to ensure their own safety in an encounter with a suspected criminal, but that under both our federal and state Constitutions, this right must be balanced against an individual citizen’s right to be free from unreasonable searches. “Although sometimes appearing to be a legal technicality, Article 215.1(B) represents the legislature’s attempt to maintain that balance by allowing the officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he ‘reasonably suspects that he is in danger.’ ” Denis, 691 So.2d at 1299. In Denis, where this Court found that the trial court erred in denying the motion to suppress the evidence, the police officer admitted it was his custom to make a patdown/frisk of everyone he stopped and that he had no particular knowledge that the defendant was armed.
In State v. Parker, 622 So.2d 791 (La.App. 4th Cir.1993), the officer received a tip from a confidential informer that a father and a son were selling drugs from a blue Nissan in front of their residence. The officer went there and found the two men sitting in their car and in possession of contraband. The defendant, a man standing near the car, began to walk away. The officer stopped him and, after arresting the men in the Nissan, patted him down to find a matchbox containing four or five rocks of cocaine. This Court found that the patdown was justified because drugs were found on the men in the Nissan, and the defendant attempted to leave the scene. This Court found that the officer had justification for the patdown, but reversed the trial court’s decision on the basis that the officer had no justification for taking a matchbox from the defendant’s pocket and opening it in a search for drugs.
Even under the “plain feel” seizure of contraband exception to the warrant requirement, the contraband must be “immediately apparent” upon mere touching. Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); State *750 v. Denis; State v. Lavigne, 95-02049 (La.App. 4th Cir.5/22/96), 675 So. 771, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140; State v. Parker, 622 So.2d 791 (La.App. 4th Cir.1993).
In the instant case, the officers failed to articulate any reasonable suspicion of criminal activity on the part of Brown that warranted a warrantless search. The officers removed the bulge from Brown’s pocket and it was a brown paper bag. Further there was no testimony that the bag appeared to have contained a weapon or that the bag even contained contraband. The officers opened the bag and discovered that it contained what appeared to be drugs. Therefore, the trial court erred in failing to grant the motion to suppress filed by Brown.

ASSIGNMENT OF ERROR TWO:

Brown argues the evidence was insufficient to support a conviction.
To evaluate whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560(1979); State v. Scott, 97-0028 (La.App. 4 Cir. 3/18/98), 709 So.2d 339. However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. The reviewing court is not permitted to consider just the evidence most favorable to the prosecution, but it must consider the record as a whole. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The factfinder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. State v. Mussall, 523 So.2d 1305 (La.1988). “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Scott, 709 So.2d at 341, quoting State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis |inof innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
To support a conviction for possession of a controlled dangerous substance, the State must prove that the defendant knowingly and intentionally possessed the contraband, here cocaine in the amount of more than twenty-eight but less than two hundred grams. La. R.S. 40:967.
Brown argues the state did not prove possession. However, the drugs were in his front pants pocket. Therefore, the State proved possession.
Brown argues the State did not prove that he possessed at least twenty-eight grams. Krone testified that he weighed the substance and it weighed forty-four grams. He randomly tested four of the nine packets, and all tested positive for cocaine. Random testing is standard police procedure. The jury may have easily inferred that all of the substance commonly contained in the bag was cocaine, when *751 almost half of it, chosen at random, tested positive for cocaine.
A rational trier of fact, viewing the evidence in a light favorable to the prosecution, could have found that all the essential elements of possession of at least twenty-eight grams of cocaine were proven beyond a reasonable doubt.
This assignment lacks merit.

ASSIGNMENT OF ERROR THREE:

Brown argues the evidence was insufficient to prove that he was a multiple [1] offender. Specifically, he argues the State failed to prove identity.
The State filed a multiple bill of information accusing Brown of being a third offender based on an earlier juvenile convictions for battery with a dangerous weapon (case # 6015J), and Inthree counts of possession of cocaine with intent to distribute [2] (case # 6145J). At the motion hearing, the State introduced a certified copy of a petition for delinquency dealing with a battery with a dangerous weapon on Nathan Bartholomey in ease # 6015J, the conditions of juvenile probation on the same offense, and the waiver of rights and plea of guilty form in that case. The State also introduced exhibits in case # 6145J: the petition of delinquency dealing with three separate counts of possession with intent to distribute cocaine, and a certified copy of the adjudication of guilt.
Captain Michael LaFrance of the Plaquemines Parish Narcotics Division said that he made a purchase from the defendant on August 11, 1992, one of the three above mentioned counts of cocaine possession. He said that in that case, he pulled into Church Lane and was approached by Bobby Riley. He ordered a rock of crack cocaine from Riley who approached the defendant and returned with the cocaine. LaFrance said he knew him from that occasion and “from a few different times he has run from us in the street.”
Walters testified that Brown was in fact the man involved in the instant case. The State introduced the bill of information in this case, and the minute entry of the original sentencing in this case, and a copy of the entire record in this case.
Curtis Bowers, Sergeant for the Plaque-mines Parish Sheriffs Office and a fingerprint expert, testified Brown’s fingerprints match those on the bill of information in this case.
The trial court then found Brown to be a second offender based on his juvenile conviction for distribution of cocaine.
Identity of a defendant as the same person who was convicted of a prior felony may be had by testimony of witnesses, by expert opinion as to the fingerprints of the defendant when compared with the ones on records, or by photographs contained in the authenticated record. State v. Curtis, 338 So.2d 662 (La.1976). In State v. Shepherd, 566 So.2d 1127 (La.App. 2nd Cir.1990), the trial judge’s viewing of the defendant personally in open court and his conclusion that he was the same individual whose photographs appeared in the prison packet was found to be sufficient evidence of identity, particularly because the defendant’s arm bore a worded tattoo 112that was described in records kept by the Department of Corrections. A district attorney’s identification of the defendant as the same person he prosecuted for another offense has also been held sufficient. State v. Bennett, 524 So.2d 1297 (La.App. 3rd Cir.1988); State v. Jones, 516 So.2d 396 (La.App. 5th Cir.1987); as has been the testimony of the defense attorney and the deputy clerk of court. State v. Lee, 364 So.2d 1024 (La.1978.)
*752 In this case, the officer testified that he actually made the cocaine purchase from Brown in the earlier case and that he recognized him at the hearing. The trial court judge stated that the earlier case was conducted by him and that he made a visual identification at the hearing.
Therefore, this is assignment is without merit.

CONCLUSION

After careful reviewing of the record, we find that the frisk and search of Brown were not legal. The officers failed to articulate a reasonable suspicion of criminal activity on the part of Brown.
Therefore, we reverse the conviction and sentence and remand this mater to the trial court.

CONVICTION AND SENTENCE REVERSED AND REMANDED.

JONES, J., concurs in part and dissents in part.

. The defendant argues the evidence was insufficient to prove that he was a third offender. In fact, the defendant was found only to be a second offender, based on the juvenile conviction for cocaine.

. The dates of the offenses were listed on the petition for delinquency as July 8, 1992, August 11, 1992 and August 13, 1992.