691 So.2d 1295 (1997)
STATE of Louisiana
v.
Lester DENIS.
No. 96-K-0956.
Court of Appeal of Louisiana, Fourth Circuit.
March 19, 1997.
C. Gary Wainwright, Gregory K. Voigt, New Orleans, for Defendant/Relator, Lester Denis.
Harry F. Connick, District Attorney, Stephen D. Enright, Jr., Assistant District Attorney, Parish of Orleans, New Orleans, for Plaintiff/Respondent the State of Louisiana.
*1296 Before SCHOTT, C.J., and PLOTKIN and MURRAY, JJ.
MURRAY, Judge.
Lester Denis was arrested and charged with possession of crack cocaine. The trial court denied his motion to suppress evidence, and he sought relief from this court. After receiving an opposition from the State, we granted Mr. Denis' writ application and summarily reversed the judgment below. The Supreme Court subsequently granted the State's writ application and remanded the matter for briefing, argument and a full opinion.

FACTS
On the evening of July 25, 1995, members of the New Orleans Police Department's Fifth District Task Force were on pro-active patrol in the area of Flood and North Miro Streets. Just before 10:00 p.m., three officers in a marked vehicle saw Lester Denis walking in the 2100 block of Flood Street and motioning with one hand to other pedestrians. Mr. Denis, who was wearing shorts and a T-shirt, appeared to have something clutched in the other hand as he walked with his back to the patrol car. When he noticed the police, Mr. Denis appeared startled, then closed his fist, placed a small object inside the back waistband of his pants, and continued walking in the opposite direction from the police vehicle.
The patrol car pulled to the curb and all three officers got out. As Officers Mark Delpit and Landries Jackson questioned the pedestrians "flagged" by the defendant,[1] Officer Kevin Hunt told Mr. Denis to stop. He complied, and Officer Hunt escorted him to the patrol car where he did a pat-down search. The officer felt a bulge or ballshaped object in Mr. Denis' lower back where he had seemed to place something earlier. Officer Hunt testified that although he asked the defendant what he had, he knew immediately that the object was not a weapon. Mr. Denis replied "nothing" and then pushed off from the car and "attempted to flee."
The testimony concerning this "escape attempt" was conflicting. Officer Hunt initially explained that the defendant had begun to walk away, but he grabbed Mr. Denis and instantly returned him to the car without a struggle. At a second hearing, however, Officer Hunt testified that Mr. Denis had tried to run away, was quickly "retrieved" and then handcuffed with Officer Delpit's assistance. Officer Delpit testified that the defendant struggled to get away and had to be restrained by the two officers.
Once the defendant was again standing against the patrol car, Officer Hunt removed the object previously detected in his waistband: a clear plastic bag containing twentyeight rocks of crack cocaine. Mr. Denis was then placed under arrest.

DISCUSSION
Article 215.1 of the Code of Criminal Procedure provides the standards under which a police officer may stop and frisk an individual in this state:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
These standards comply with those established under the Fourth Amendment of the U.S. Constitution, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), as well as the greater protections of Article I, Section 5 of the Louisiana Constitution. State v. Cobb, 419 So.2d 1237, 1242 (La.1982); State *1297 v. Bolden, 380 So.2d 40 (La.), cert. denied, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980).
In this case, the testimony of the arresting officers establishes that the particular area they were patrolling was selected based upon complaints relayed by City Council members of drug dealing and other unspecified crimes, but there had been no tip concerning any particular suspect(s) or location upon which they were acting. Although Officer Hunt stated he might have had prior contact with the defendant, there was no testimony that either Mr. Denis or the people approaching him were recognized by the officers as having any prior criminal history or reputation. None of the policemen could hear what Mr. Denis was saying as he motioned with one hand, nor could they identify the object in his other hand. No hand-to-hand transaction or exchange of money occurred, and the defendant was not seen opening his hand and pulling anything out of it.
None of the officers testified that Mr. Denis was believed to be engaged in drug dealing. While they said they interpreted Mr. Denis' gestures as attempts to get the attention of the two or three approaching pedestrians, no testimony was elicited to explain why this behavior seemed suspicious, alone or in conjunction with his subsequent actions. To the contrary, the only testimony presented as an articulation of the grounds for the stop came on cross examination of Officer Delpit, who denied having any specific suspicions:
Defense counsel: What, if anything, crimeyou saw this man walkingwhat if any crimedid you have any information that was within your knowledge he was committing?
Officer Delpit: I didn't have any knowledge that he was committing a specific crime.
Defense counsel: So ya'll decided that you would just conduct a pedestrian stop to interrogate this citizen who was walking down the street?
Officer Delpit: Due to the area, the time of night, his actions, we decided to stop and conduct a pedestrian stop.
The testimony thus establishes that the officers decided to stop and question Mr. Denis based solely upon his startled reaction, his apparent placement of the unidentified object into his waistband and his decision to continue walking in the direction away from the patrol car.[2] There was no further testimony elicited to suggest a basis for the officers' suspicion of Mr. Denis.
It is well-established that the level of suspicion which will justify an investigatory stop is less than the probable cause needed for an arrest, and that the totality of the circumstances must be considered in determining whether the standards of Article 215.1 A are met. State v. Allen, 95-1754, pp. 4-5 (La.9/5/96), 682 So.2d 713, 718; see also State v. Lavigne, 95-0204, p. 5 (La.App. 4th Cir. 5/22/96), 675 So.2d 771, 775-76, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140, and cases cited therein. An inchoate, unparticularized hunch is insufficient grounds for detention under Article 215.1 A. State v. Williams, 621 So.2d 199 (La.App. 4th Cir. 1993).
In State v. Ellington, 96-0766 (La.App. 4th Cir. 9/4/96), 680 So.2d 174, this court found that an attempt to conceal an unidentified object when the police are sighted, even "in an area known for high drug activity," was insufficient justification for an investigatory stop. Similarly, in State v. Edwards, 530 So.2d 97 (La.App. 4th Cir.), writ denied, 533 So.2d 19 (La.1988), officers patrolling an area known for narcotics activity approached an individual who was showing his companion an object clenched in his hand. The defendant fled, but the officers saw him enter a sweetshop, remove a gun from his waistband and place it under a door. This Court found the officers did not possess reasonable suspicion of criminal activity and thus were without authority to make an investigatory stop.
While the testimony in the present case offers little more than what was offered in Ellington or in Edwards, the State argues that the totality of the circumstances created *1298 a reasonable suspicion that criminal activity was occurring: In an area where drug activity had been reported, Mr. Denis was waving to other pedestrians while he held something in his hand, but when he saw the police he placed the object in the back of his shorts and walked away. The State contends that because these were the observations of "experienced Task Force officers," their familiarity with the typical conduct involved in drug dealing on the streets must be considered. However, the State's assertion regarding the officers' experience is not supported by any evidence; other than being assigned to the Task Force that night, no testimony was elicited concerning the officers' background or history in law enforcement. Thus, in addition to the absence of testimony that actual criminal activity was observed, there was nothing to suggest Mr. Denis was "about to commit an offense," as required under Article 215.1 A. As in Ellington and Edwards, we find that the evidence is insufficient to justify the investigatory stop of Mr. Denis.
Even if it were found that the stop was justified by the evidence presented by the State, the testimony does not establish that the officers had any particularized grounds to frisk the defendant. Rather, Officer Hunt testified that as a matter of policy he frisks anyone he stops. The following testimony was offered on this issue:
Defense counsel: Now, when he was making gestures to these people, which hand was he using?
Officer Hunt: I believe he was using his right hand.
Defense counsel: What was he doing with his left hand?
Officer Hunt: It was down to his side in a balledin a clenched fist.
Defense counsel: Okay. You didn't see a gun in his left hand, did you? You didn't see a gun or any other kind of weapon in his left hand, did you?
Officer Hunt: No, I didn't.
Defense counsel: You didn't [see] a gun in his right hand, did you?
Officer Hunt: No.
Defense counsel: There was no time that you believed he was armed, did you?
Officer Hunt: No.
* * * * * *
Defense counsel: Now, when you had him back at the car, were you concerned that he had a weapon?
Officer Hunt: Well, I'm always concerned thatsubjects that I put on the car, I'm always concerned that they have weapons. I don't know if they have weapons or not so I have to do a pat-down check.
Defense counsel: You didn't see any bulges or anything on this person, did you, in his pockets or in his waistband?
Officer Hunt: I don't recall.
Defense counsel: What was he wearing that night, do you recall?
Officer Hunt: He was wearing a pair of shorts and a T-shirt.
Defense counsel: Did you see any bulges under the T-shirt that would have indicated that he had a weapon under there?
Officer Hunt: No. I was basically concerned with his hands.
* * * * * *
Defense counsel: Now, is it your training that you're entitled to pat-down/frisk every citizen you do a pedestrian stop on?
Officer Hunt: Yes, for my safety as well as the safety of others.
Defense counsel: And that's what you were taught at the academy?
Officer Hunt: Yes, sir.
No testimony was elicited from either Officer Delpit or Officer Jackson which would indicate that they believed Mr. Denis was armed, or that he engaged in any threatening behavior prior to the pat-down.
Article 215.1 consists of two different standards, separately stated in subsections A and B. It does not provide that an officer conducting an investigatory stop may, on this basis alone, frisk the individual stopped. As explained by our Supreme Court:
While it is true that an officer is never justified in conducting a pat-down for weapons unless the original detention itself *1299 was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a pat-down for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Further, the officer's belief is not reasonable unless the officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. [40] at 64, 88 S.Ct. [1889] at 1903, 20 L.Ed.2d [917] at 935 [1968]. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a "substantial possibility" of danger.
State v. Hunter, 375 So.2d 99, 101-02 (La. 1979) (final citation omitted).
The State's sole argument on this issue is that this incident occurred "in a high crime area," and that Mr. Denis was seen placing an object in the back of his waistband. It is asserted that "[a] reasonably prudent officer, for his own safety, under like circumstances would want to insure that the suspect was not armed. Thus, Officer Hunt had the right to conduct a pat-down for weapons."
We recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state Constitutions, however, this right must be balanced against an individual citizen's right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article 215.1 B represents the legislature's attempt to maintain that balance by allowing an officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he "reasonably suspects that he is in danger."
A police officer's duty to enforce and uphold the laws includes not only those statutes that define and prohibit criminal conduct, but also those which define and limit the government's intrusion into the lives of its citizens. Unless the plain language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A, the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based. Eliminating the requirement for such articulation not only eviscerates this statute, but also opens the door for potential abuse by the rare officer who acts upon personal prejudices rather than actual observation and experience.
In this case, rather than offering evidence that would support the officers' belief that they were in danger, Officer Hunt's testimony establishes that "there was no time that [he] believed [Mr. Denis] was armed." Therefore, because the State failed to establish justification for the frisk, the trial court erred in denying the motion to suppress the evidence discovered through that action.
Finally, we find that, even if Mr. Denis had been lawfully stopped and frisked, the seizure of the bag of cocaine was not warranted under the law. The officer who conducted the frisk specifically testified that at no time did he believe the bulge was a weapon. Additionally, no testimony was elicited to suggest any basis for a belief that the object he felt was contraband:
Defense counsel: Had you seen any narcotics at that time [when Mr. Denis was first escorted to the patrol car]?
Officer Hunt: No, not at that time.
Defense counsel: Had you seen any plastic bags or anything?
Officer Hunt: I observed an object in his left hand.
Defense counsel: But you didn't know what that object was, did you?
Officer Hunt: No.
* * * * * *
Defense counsel: Now, when you felt that object in his waistband, you knew it wasn't a weapon, didn't you?
Officer Hunt: I knew it wasn't a weapon, that's right.

*1300 Defense counsel: At that time, Officer, you didn't know what that object was, did you?
Officer Hunt: Sir?
Defense counsel: You didn't know what that object was when you felt it, did you, other than it wasn't a weapon?
Officer Hunt: I knew that it wasn't a weapon but I believed that it was possibly narcotics contraband.
* * * * * *
Defense counsel: Now, when you felt the bulging object in Mr. Denis' waistband, did that feel like one object or more than one object?
Officer Hunt: It felt like one object, almost like a ball, a ball shape.
* * * * * *
Defense counsel: And when you called him to get on your police car, when you claim you felt a lump, you did not feel that and identify that as a weapon, did you?
Officer Hunt: No, I did not.
Defense counsel: And when you felt it, you did not immediately identify it as cocaine either, did you?
Officer Hunt: I asked him what it was.
Neither Officer Delpit nor Officer Jackson recalled Officer Hunt saying anything more than to ask Mr. Denis what the "bulge" was, nor was any further testimony elicited concerning the basis for Officer Hunt's belief "that it was possibly narcotics contraband."
In this case, because Officer Hunt knew the object in Mr. Denis' waistband was not a weapon, his removal and examination of the bag was not justified under Article 215.1 B. Nevertheless, evidence discovered during a lawful investigatory frisk may be seized under the "plain feel" exception to the warrant requirement, as explained in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, just as the "plain view" doctrine requires that an object's incriminating character be immediately obvious when seen, the "plain feel" doctrine requires the tactile discovery of "an object whose contour or mass makes its identity immediately apparent." Dickerson, at 375, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. Thus, in State v. Parker, 622 So.2d 791 (La. App. 4th Cir.), writ denied, 627 So.2d 660 (1993), the seizure of a matchbox containing cocaine detected during a pat-down search was found not to fall within the "plain feel" exception because there was no evidence that a matchbox's shape was identifiable as contraband. In contrast, in State v. Stevens, 95-501 (La.App. 5th Cir. 3/26/96), 672 So.2d 986, the seizure of drugs in a matchbox detected during a lawful pat-down was upheld because the officer testified that her prior experience indicated that most street-level crack dealers carried their drugs in a matchbox. Similarly, where testimony establishes that an object detected during a patdown was immediately identifiable as a "crack pipe," suppression of the cocaine residue contained within the pipe is not required. State v. Lavigne, 95-0204 at p. 9, 675 So.2d at 778; State v. Livings, 95-251, pp. 5-6 (La.App. 3d Cir. 11/15/95), 664 So.2d 729, 733, writ denied, 95-2906 (La.2/28/96), 668 So.2d 367.
In the present case, no testimony was elicited which would indicate that the bulge in the back of the defendant's pants was immediately identifiable as contraband. To the contrary, Officer Hunt testified that he did not know what it was, and offered no basis for his suspicion that it was illegal drugs. Thus, the seizure of the bag exceeded the scope of the frisk and can not be justified under the "plain feel" exception to the warrant requirement.
For these reasons, we find that the trial court abused its discretion in denying the motion to suppress evidence. The trial court's judgment is therefore reversed.
JUDGMENT REVERSED.
SCHOTT, C.J., dissents.
PLOTKIN, J., concurs in the result.
SCHOTT, Chief Judge, dissenting:
We are dealing here with a simple occurrence which took place in a few minutes and is typical of such events taking place everyday on the streets in New Orleans. When the trial judge denied defendant's motion to suppress he made a practical common sense judgment. This court should do the same.
*1301 This was a high crime area in New Orleans and the police had gotten complaints about drug trafficking at this particular location from citizens and from members of the City Council. When they approached they saw what looked like what goes on all over New Orleans every night and even in daylight: drug pushers hawking their merchandise to passers-by. When the defendant furtively tucked the bag he was holding into his waistband attempting to conceal it the police knew what he was doing so they had every right to stop him. If they hadn't we would want to fire them for dereliction of duty. Now they find themselves in this high crime area on the streets of New Orleans confronting a probable drug peddler so they pat him down and feel a bulge on his person. It doesn't feel like a weapon so they ask him what it is. He says it is "nothing" and tries to flee. Of course it is something which turns out to be twenty-eight rocks of crack cocaine.
A hair-splitting analysis of this scenario might lead some judges to conclude that the officers were obliged to let the defendant go even though they were convinced he was peddling drugs and had concealed his supply on his person.
I submit that judges are so preoccupied with cases involving Terry stops and C.C.P. art. 215.1 stops that they forget the authority of a policeman to make an arrest under C.C.P. art. 213 when the person has committed an offense in his presence. When the police see activity that looks like dope peddling, the participants are acting like dope peddlers, the neighborhood is proliferated with dope peddling, the presumed dope peddler conceals something on his person when he sees the police approaching, and he tries to flee when they ask him what it is, they can reasonably infer that he has committed an offense in their presence: he has sold narcotics or at least he is possessing them. If they don't arrest him they ought not be on the police force. Of course, a search incident to an arrest is always legal.
If we are going to make any progress in the war on drugs we have to be practical. We have to look for something in the law to justify the kind of conduct the officers engaged in here rather than legal technicalities that prohibit it. To suppress the evidence in this case is a triumph of technicalities over common sense. It discourages the police from doing their duty and undermines the confidence of citizens in the justice system.
PLOTKIN, Judge, concurring in the result.
Although I disagree with the discussion of the law governing the stop and frisk and would find that the relator was subjected to a valid investigatory stop based on reasonable suspicion, I concur in the result because I consider this record insufficient to support a finding that the incriminating character of the evidence was immediately apparent to the officer who conducted the pat-down search.
NOTES
[1] These individuals were released after their names were run through the computer and they were briefly questioned.
[2] According to Officer Delpit, the defendant was already walking towards the other corner, away from their approaching vehicle, at the time he was first noticed by the officers.