1JONES, Judge.
Lamar J. Isidore appeals his conviction for possession of heroin under State vs. Crosby, 338 So.2d 584 (La.1976). He was sentenced to serve seven years at hard labor without benefit of probation, parole or suspension of sentence. We reverse.

FACTS

Plaquemines Parish Deputy Sheriff Steven R. Vogt testified at trial that on August 22, 1999 he received a complaint from a citizen who saw two individuals get into a Cadillac or Lincoln-type automobile and drive off as the citizen was exiting a bar. The citizen then discovered that a gun was missing from underneath the seat of his vehicle, and suspected that the two men he had seen were connected to the theft. The citizen subsequently informed Deputy Vogt that one of the men was Lamar Isidore. The prosecutor refreshed the deputy’s memory with his investigative report, and the deputy recalled the name of the citizen-complainant. That night, Deputy Vogt stopped a vehicle for speeding on Highway 15. Deputy Vogt testified that the vehicle was the same type of vehicle described by the citizen in the missing gun complaint. The deputy asked the driver of the vehicle who his passenger was, and was told “Lamar.” The deputy asked Isi-dore to step out of the | ^vehicle and Deputy Vogt patted Isidore down because he suspected he was connected to the theft of the gun. The deputy removed Isidore’s baseball cap because of the known possibility that weapons could be in or underneath it. When the deputy shook the cap, a small cellophane packet fell out of the hatband. The deputy testified that he could see the substance through the bag, and testified that it “looked consistent with *82 narcotics.” After advising Isidore of his rights, the deputy asked him what the substance was, and he admitted that it was cocaine. The substance was later found to be heroin. Deputy Vogt searched the vehicle with the consent of the driver, but found no weapons. Deputy Vogt testified that no backup officers were ever called to the scene, and that he was alone.
Deputy Vogt further testified on cross examination that at his discretion he decided not to issue a speeding citation to the driver. He also admitted that he patted down Isidore in part because he knew he had a prior drug arrest, and knew that weapons were involved in many drug cases. Deputy Vogt testified he was looking for the stolen gun, but also for any weapon that could be hidden in a baseball cap, such as a knife, a razor blade or a fish hook. He opined that a person who steals a gun might have another type of weapon. While he agreed with defense counsel that those items could be found by a patdown, he testified that an officer could be cut by patting such an item, and therefore caps needed to be removed. Defense counsel questioned Deputy Vogt about a report entry that he stopped the vehicle because it was swerving. Deputy Vogt then testified that he stood corrected, and stated: “that must have been the [reason for the] stop.” Deputy Vogt admitted that he had stopped Isidore on other occasions and had not patted him down.

\ ¿ERRORS PATENT

A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR

By his sole assignment of error, Isidore argues that the district court erred in denying his Motion to Suppress the evidence, as both the stop and pat-down frisk were unlawful.
Isidore first argues that there was no reasonable suspicion to stop him. Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797, p. 11 (La.7/2/99), 750 So.2d 893, 901, cert. denied, Edwards v. Louisiana, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). On trial of a Motion to Suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D); State v. Kirk, 00-0190, p. 3 (La.App. 4 Cir. 11/15/00), 773 So.2d 259, 262; State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395. A trial court’s ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Devore, 00-0201, p. 6 (La.App. 4 Cir. 12/13/00), 776 So.2d 597, 600-601; State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194.
La.C.Cr.P. art. 215.1(A) codifies the U.S. Supreme Court’s authorization of protective searches for weapons in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and provides:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an 14offense and may demand of him his name, address, and an explanation of his actions.
“Reasonable suspicion” to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringe *83 ment of the suspect’s rights. State v. Jones, 99-0861, p. 10 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 36-87; State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, p 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. State v. Carter, 99-0779, p. 6 (La.App. 4 Cir. 11/15/00), 773 So.2d 268, 274. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Lipscomb, 99-2094, p. 11 (La.App. 4 Cir. 9/13/00), 770 So.2d 29, 36; State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Jackson, 99-2993, p. 3 (La.App. 4 Cir. 10/18/00), 772 So.2d 808, 810; State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299. In reviewing the totality of the circumstances, the officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Hall, 99-2887, p. 4 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, 57; State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160.
Isidore first argues that Deputy Vogt’s testimony was incredible. Isi-dore points out that the deputy first testified that he stopped the vehicle for speeding, and that he knew the vehicle was speeding because he clocked it with his radar. However, he did not recall how fast it was traveling. The prosecutor subsequently asked if he remembered what the speed was as reflected on his radar gun, and the deputy replied that the vehicle had been traveling approximately fifty miles per hour in a thirty-five miles per hour zone. He said on cross-examination that other than speeding, the driver had done nothing wrong. When confronted with his narrative report stating that he stopped the vehicle because it was swerving, Deputy Vogt said that must have been the reason for the stop. Isidore notes that the deputy testified that he observed the traffic offense prior to noticing that the vehicle matched the description of the one possibly involved in the gun theft. Isidore also argues that the narrative report reflects that the deputy began following the vehicle because it matched the description of the one involved in the gun theft, but did not stop the vehicle until after he observed the traffic violation. Defense counsel did not cross examine Deputy Vogt on this point, and the report, though contained in the record, was not introduced as evidence at the hearing. There is no indication that the district court considered the narrative report in ruling on the motion, and pthe narrative report cannot be considered.[1]
*84 The district court had reason to question Deputy’s Vogt’s credibility, as he admittedly testified inaccurately as to the reason for the stop. The district court was mindful of this fact, but specifically stated that the court had nothing from which to conclude that the officer was lying. The court believed the officer’s revised testimony that he stopped the vehicle for a traffic violation. Further, Isidore does not suggest that a traffic violation is insufficient grounds for an investigatory stop. Thus, it cannot be said the discrepancy in Deputy Vogt’s testimony so undercnined his credibility that the district court’s credibility determination was an abuse of discretion. Isidore also cites what he characterizes as an inconsistency in that Deputy Vogt testified that he suspected that both subjects had been involved in drug activity, but had no personal knowledge of that fact. Later, the deputy confirmed the prosecutor’s statement that he suspected or thought that the two men were involved in drug activity. There is no inconsistency between these two statements. Isidore has failed to show that the district court abused its discretion in accepting Deputy Vogt’s testimony as the reason for the stop.
Isidore next argues that even if the stop was legitimate, the deputy’s actions exceeded the scope of a lawful pat-down search. If a police officer stops a person pursuant to La. C.Cr.P. art. 215.1(A) whom he reasonably suspects is committing, has committed, or is about to commit a crime, and reasonably suspects that he is in 17danger, the officer may frisk the outer clothing of such person for a dangerous weapon; if the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person. La. C.Cr.P. art. 215.1(B); State v. Jones, 99-0861, p. 12 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 38. The officer need not be absolutely certain that the person is armed, but the facts must justify a belief that the officer’s safety or that of others is in danger. State v. Williams, 98-3059, p. 4 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144.
Isidore does not dispute the district court’s finding that Deputy Vogt was justified in conducting a patdown search of him, only that the deputy’s removal and shaking out of his baseball cap, whereupon the small plastic bag of heroin fell out, exceeded the scope of a permissible search for weapons.
In State v. Sheehan, 99-0725 (La.7/2/99), 767 So.2d 1, police received complaints that several men standing on a street corner were selling narcotics. Police and federal agents arrived, and one man fled. The agents and officers stopped the other men and patted them down for weapons. One agent noticed an open cigarette package in the pocket of the defendant’s shirt pocket. Based on his past experience, he knew that razor blades were often concealed in cigarette packs. He removed it and unfolded cellophane at the bottom, revealing a single rock of crack cocaine. The court found that this search amounted to the sort of evidentiary search that Teiry expressly refused to authorize.
In a Minnesota case presenting very similar facts, State v. Crook, 485 N.W.2d 726 (Minn.Ct.App.1992), officers lawfully stopped the defendant and proceeded to perform a patdown search for weapons. The suspect’s baseball cap was removed from his head at the beginning of the search. As the officer placed it on the top of the defendant’s vehicle, a small marijuana cigarette fell out from | aunder the front brim of the cap. Two rocks of crack cocaine were subsequently found when the officer removed the interior brim. At the motion to suppress hearing, the officer testified that he removed the cap knowing *85 that people either hide drugs or small weapons such as knives or small guns in their hats. He also stated that items that could be used as weapons, such as razor blades, fingernail files, bobby pins, and extended paper clips can be hidden in the brim, and that those items would not be felt during a patdown search. The appellate court rejected that reasoning, stating that the officer could have reasonably expected to feel a weapon such as a gun or knife through the material of the cap, and that a weapon such as a razor blade hidden in the cap would not present a danger to a police officer armed with a firearm. The court held that the removal of the defendant’s cap from his head as an alternative to a patdown search of the cap, while still on the defendant’s head, went beyond a Terry protective weapons patdown. The court held that a cap or hat should not be removed from a person’s head during a Terry patdown search unless a weapon is detected during a patdown search of the cap or hat while still on the individual’s head.
In State v. Barney, 97-777 (La.App. 5 Cir. 2/25/98), 708 So.2d 1205, an officer conducting a patdown frisk felt an object he thought was a matchbox in one of the defendant’s rear jeans pockets. The officer said that the matchbox could have contained a razor blade, so he opened it and discovered several rocks of crack cocaine. The appellate court stated that even assuming that the matchbox could have contained a razor blade, once the matchbox was taken from the defendant it was not under his control and therefore ceased to be a threat to the officer’s safety. The court held that the officer’s “opening” of the matchbox exceeded the scope of a frisk under Terry.
|9In the instant case, Deputy Vogt testified that he removed defendant’s baseball cap because of the known possibility that weapons could be in or under it. However, if a gun or knife of any appreciable size were under the cap, the deputy could have detected it during a patdown of the cap while it was still on the defendant’s head. Deputy Vogt mentioned smaller items that could be used as weapons, such as a razor blade or a fishhook. While the Minnesota court in Crook found that a razor blade would not present a danger to a police officer armed with a gun, that cannot be said with one hundred percent certainty. However, an item such as a razor blade or fishhook could be hidden in any number of places on one’s person where discovery would not be possible in the course of a Terry protective patdown search for weapons. Clearly, the removal and “shaking out” of an individual’s wallet would exceed the scope of a protective pat down search for weapons. Yet, a wallet could easily conceal a razor blade, a fishhook, or even a small flat knife. The cigarette package in Sheehan could also conceal these items. Further, as in Barney, even assuming defendant’s cap contained a razor blade, once it was removed from defendant’s head by the deputy, any weapon therein would not have, as a practical matter, posed a threat to the deputy. The deputy could have placed the cap on the top the vehicle in which defendant had been traveling, or some other place. It must be remembered that the contraband was not discovered merely upon Deputy Vogt removing the cap from defendant’s head and turning it over, as was the case in Crook. The deputy had to shake it out before the plastic bag containing one rock of cocaine was dislodged from the band of the cap. Finally, while Officer Vogt suggested that patting down the baseball cap on defendant’s head would have exposed him to the danger of cutting himself on a hidden weapon, such a patdown would not appear to present any more of a danger |10to law enforcement officers than does *86 the routine patdown of a jacket, pants or shirt.
Terry authorized a “carefully limited search of the outer clothing” for weapons. 392 U.S. at 30, 88 S.Ct. at 1885. Terry itself involved a “patdown” of the defendant’s outer clothing. Nothing in Terry or its progeny authorizes the routine removal of any article of clothing or any clothing accessory such as a baseball cap as part of a patdown search — absent the detection of a weapon or immediately identifiable contraband during an actual pat-down of the cap while still on the person’s head. Accordingly, Deputy Vogt’s action in removing the baseball cap from Isi-dore’s head and shaking it out exceeded the scope of a permissible Tern/ patdown search. The district court should have granted his Motion to Suppress the evidence.
There is merit to this assignment of error.

DECREE

For the foregoing reasons, the judgment of the district court denying Lamar J. Isidore’s Motion to Suppress is reversed, and that Isidore’s conviction and sentence are vacated and set aside. The matter is remanded to the district court for further proceedings.

REVERSED AND REMANDED.

. A court of appeal cannot consider documents not properly introduced into evidence. Wood v. Tubre, 98-1041, p. 6 (La.App. 1 Cir. 5/14/99), 732 So.2d 838, 841, writ denied, 99-1721 (La.9/24/99), 747 So.2d 1126. See also State ex rel. Guste v. Thompson, 532 So.2d 524, 527, n. 2 (La.App. 1 Cir.1988) (court of appeal may not consider exhibits filed in record which were not filed in evidence, unless authorized by law to do so).