PAUL A. BONIN, Judge.
|,We granted the prosecution’s application for a writ of certiorari in order to review its complaint that the district judge erred when he suppressed for use at trial the illegal narcotics evidence seized from the person of the defendant, Artez Carter, during a weapons frisk. The parties were afforded oral argument.
Because the prosecution failed to meet its burden of showing that the frisking officer believed the narcotics to be a weapon or that their illicit nature was immediately apparent to that officer, we find that the district judge did not abuse his discretion in granting Mr. Carter’s motion to suppress. We thus affirm the ruling and remand the matter to the trial court for further proceedings. We explain our decision in more detail below.
I
Under Louisiana law, the prosecution does not enjoy the right to appeal an adverse ruling on a motion to suppress. See La.C.Cr.P. art. 911 (“Appeal is the exercise of the right of the state or the defendant to have a judgment or ruling reviewed by the proper appellate court.”); La.C.Cr.P. art. 912 B (listing those [¿judgments or rulings which are appeal-able by the prosecution). By way of contrast, in federal criminal proceedings, the government may appeal a decision suppressing or excluding evidence “if the United States attorney certifies to the district court that the appeal is not taken for the purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.” 18 U.S.C. § 3731. Thus, in order to obtain relief from an adverse ruling in Louisiana state courts, the prosecution must request that we exercise our supervisory jurisdiction, which is at our discretion to grant. See La. Const. art. 5, § 10. See also Livingston Downs Racing *485 Association, Inc. v. Louisiana State Racing Comm’n, 96-1215 (La.App. 4 Cir. 6/5/96), 675 So.2d 1214, 1216 (“the difference between supervisory jurisdiction and appellate jurisdiction is that the former is discretionary on the part of the appellate court while the latter is invocable by the litigant as a matter of right”).
Here, the prosecution has described the suppressed narcotics as “critical evidence at the trial of this matter” and further noted that it has no remedy on appeal. Because the pending counts against Mr. Carter all involve possession of narcotics with the intent to distribute, an acquittal would be expected without ability to introduce the illegal narcotics as evidence at trial, and, importantly, the prosecution cannot appeal a verdict of acquittal. See La.C.Cr.P. art. 912 B. A defendant whose motion to suppress is denied, however, has an adequate remedy on appeal in the event of a conviction either by assigning as error the district judge’s denial of his motion to suppress or by reserving appellate review of that [¡¡ruling when pleading guilty under State v. Crosby, 338 So.2d 584, 588 (La.1976).[1] In either situation, the defendant obtains appellate review of the suppression ruling as a matter of right.
We therefore granted the prosecution’s writ of certiorari to review the district judge’s ruling to suppress the narcotics, which is binding at trial.[2] See La. C.Cr.P. art. 703 F.
II
Mr. Carter claims that his fundamental right to be secure in his person was violated when Officer Buckle of the New Orleans Police Department seized narcotics from inside his clothes while conducting a frisk of Mr. Carter for weapons. After hearing the argument of counsel and testimony on the matter, the district judge granted Mr. Carter’s motion to suppress. After our de novo review, we find the search to be unreasonable under the Fourth Amendment. Accordingly, the district judge did not abuse its discretion.
A
In this Part, we set forth the facts pertinent to our review. On July 11, 2013, Mr. Carter was charged by bill of information with possession with the intent to distribute cocaine, heroin, and marijuana, violations of La. R.S. 40:967 B(1); 966 A(1, 2). After Mr. Carter pled not guilty, his defense counsel filed a motion to Lsuppress. At the hearing conducted on that motion, the district judge granted Mr. Carter’s motion to suppress the evidence and found insufficient probable cause to substantiate the charges against Mr. Carter. The state timely filed this writ application.
On the evening of July 11, 2013, Mr. Carter was sitting inside the Sportsman’s Corner Bar, located at 2433 Dryades Street in New Orleans, an area known to the police to have a reputation for narcotics distribution, shootings, and other violent crimes. At that same time, police officers were dispatched to investigate a *486 complaint that several men, two of whom were armed, were selling narcotics outside of that bar on the corner of Second Street and Dryades Street.
As the responding patrol vehicles approached the location, several of the men ran into the bar and were pursued by the police officers. Sergeant Eric Gillard observed one of the men, later identified as Mr. Carter’s co-defendant, Tyran Jones, clutching his waistband as he ran inside. This suggested to Sergeant Gillard that he was concealing a firearm. Upon entering the bar, Officer Troy Pichón observed Mr. Jones drop a loaded black 9 mm. handgun and a clear plastic bag containing fourteen pieces of crack cocaine into an empty mop bucket. Officer Pichón then arrested Mr. Jones, advised him of his Miranda rights, and escorted him out of the bar.
Mr. Jones told Sergeant Gillard that he was a convicted felon and could not go back to jail. In an attempt to curry favor, Mr. Jones then volunteered to Sergeant Gillard that Mr. Carter was a drug dealer and had illegal narcotics on him. | ¡¡Mr. Jones also described Mr. Carter’s clothing and where he was sitting at the bar. The police then went inside the bar and located Mr. Carter. No drugs or other incriminating evidence were in the officer’s plain view at that time. Mr. Carter was then advised of his Miranda rights and escorted out of the bar. All agree that Mr. Carter had done nothing suspicious at that point and that the sole basis for his detention was the suspicion aroused on account of Mr. Jones’s statement to the police.
Officer Buckle frisked Mr. Carter for weapons out of concern for his and the officers’ safety. He did not locate any weapon on Mr. Carter, but reached into Mr. Carter’s pants and removed a plastic bag containing cocaine, heroin, and marijuana. Officer Buckle did not testify at the motions hearing. There was no evidence presented that Officer Buckle believed that the narcotics were a weapon of any kind or that, solely by feeling, it was immediately apparent that the contents were narcotics.
B
In this Part, we set forth the legal precepts which guide our review. The Fourth Amendment to the United States Constitution[3] and La. Const. art. I, § 5 protect persons against unreasonable searches and seizures. It is important to remember that “ ‘the Fourth Amendment protects people, not places.’” Terry v. Ohio, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (quoting Katz v. U.S., 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). In order for the Fourth Amendment to guard a citizen from unreasonable state action, | (¡however, that person must have a reasonable expectation of privacy at the time of the search or seizure. See Terry, 392 U.S. at 9, 88 S.Ct. 1868. See also State v. Clausen, 97-0885, p. 4 (La.App. 4 Cir. 7/2/97), 697 So.2d 1066, 1068. “ ‘Reasonableness is always the touchstone in striking the balance between legitimate law enforcement concerns, such as officer safety, and protected individual privacy interests.’ ” State v. Francis, 10-1149, pp. 4-5 (La.App. 4 Cir. 2/16/11), 60 So.3d 703, 708 (quoting State v. Bell, 09-0574, p. 14 (La.App. 4 Cir. 12/9/09), 28 So.3d 502, 512).
Warrantless searches and seizures are per se unreasonable under the Fourth Amendment unless they fit within one of the narrow exceptions to the warrant requirement. See Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). See also State v. *487 Isidore, 00-2781, p. 3 (La.App. 4 Cir. 5/23/01), 789 So.2d 79, 82. The state has the burden of proving that a warrantless search is compatible with an exception, and, thus, that the evidence seized as a result of that search is admissible. See La.C.Cr.P. art. 703 D.
The relevant exception in this case is a Terry stop. Importantly, the prosecution does not seek to justify Officer Buckle’s actions as a search incident to a lawful arrest, which requires probable cause to justify the search. See United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (“A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.”). Therefore, the merits of that exception will not be considered.
|7“ ‘[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot ... ’ the officer may briefly stop the suspicious person and make ‘reasonable inquiries’ aimed at confirming or dispelling his suspicions.” Dickerson, 508 U.S. at 373, 113 S.Ct. 2130 (quoting Terry, 392 U.S. at 30, 88 S.Ct. 1868). Furthermore, “ ‘[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,’ the officer may conduct a frisk ‘to determine whether the person is in fact carrying a weapon.’ ” Id. (quoting Terry, 392 U.S. at 24, 88 S.Ct. 1868). This exception is codified in Louisiana Code of Criminal Procedure article 215.1. This article complies with the standards established under the Fourth Amendment to the U.S. Constitution and La. Const. art. I, § 5. See State v. Denis, 96-0956, p. 3 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, 1296. Should the officer choose to frisk the person seized, we will review the seizure and search separately to determine whether each of the officer’s actions was reasonable. See Francis, 10-1149 at p. 9, 60 So.3d at 710.
1
In order to justify the investigatory stop, the officer must have reasonable suspicion that a person is committing, has committed, or is about to commit an offense. See La.C.Cr.P. art. 215.1 A. A person seized in this manner is protected by the Fourth Amendment. See Terry, 392 U.S. at 16, 88 S.Ct. 1868 (“[Whenever a police officer accosts an individual and restrains his freedom to walk away, he has ‘seized’ that person” for Fourth Amendment purposes).
RWe must determine “whether the officers had sufficient knowledge of the facts and circumstances to justify an infringement [of a particular] individual’s right to be free from governmental interference.” State v. Johnson, 94-1170, p. 5 (La.App. 4 Cir. 8/23/95), 660 So.2d 942, 947. Reasonable suspicion for an investigatory stop “is something less than probable cause for arrest.” State v. Fogan, 609 So.2d 1016, 1018 (La.App. 4th Cir.1992). See also Dickerson, 508 U.S. at 373, 113 S.Ct. 2130; Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). This review is “an objective inquiry into the totality of the circumstances surrounding the encounter,” State v. Dumas, 00-0862, p. 2 (La.5/4/01), 786 So.2d 80, 81 (citing State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881), and calls for consideration of whether “the facts available to the officer at the moment of the seizure ... warrant a man of reasonable cause in the belief that the action taken was appropriate.” Terry, 392 U.S. *488 at 21-22, 88 S.Ct. 1868 (internal quotations and punctuation omitted)(emphasis added).
“[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.” Terry, 392 U.S. at 21, 88 S.Ct. 1868. See also Francis, 10-1149 at p. 6, 60 So.3d at 709. “An inchoate, unpar-ticularized hunch is insufficient grounds for detention under [La.C.Cr.P. art.] 215.1[A].” Denis, 96-0956 at p. 4, 691 So.2d at 1297. It is less demanding, however, “not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the |3sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.” White, 496 U.S. at 330, 110 S.Ct. 2412.
Officers can consider whether the person attempted to flee or appeared nervous at the sight of police officers. See Johnson, 94-1170 at p. 5, 660 So.2d at 947. Additionally, officers can weigh the reputation of the area being patrolled, see State v. Dappemont, 98-0446, p. 12 (La.App. 4 Cir. 3/17/99), 734 So.2d 736, 742, as well as other cumulative information available to the officer as a result of his training, experience, and common sense. See Terry, 392 U.S. at 27, 88 S.Ct. 1868; State v. Boyer, 07-0476, p. 17 (La.10/16/07), 967 So.2d 458, 469-470; Isidore, 00-2781 at p. 4, 789 So.2d at 83. Finally, an officer’s knowledge about the criminal history of the particular person being stopped can also be considered but may not be the only factor justifying the stop. See Dumas, 00-0862 at p. 4, 786 So.2d at 82.
We also examine the extent of a seizure and determine “whether it was reasonably related in scope to the circumstances which justified the interference in the first place.” See Terry, 392 U.S. at 19-20, 88 S.Ct. 1868. “The Fourth Amendment proceeds as much by limitations upon the scope of governmental action as by imposing preconditions upon its initiation.” Id. at 28-29, 88 S.Ct. 1868. An investigatory stop that transforms into a custodial arrest without the requisite probable cause is as violative of the Fourth Amendment as an investigatory stop lacking reasonable suspicion.
Iu>2
“When a law enforcement officer has stopped a person pursuant to [La. C.Cr.P. art. 215.1 A] and reasonably suspects that he is in danger, he may frisk the outer of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.” La.C.Cr.P. art. 215.1 B.[4] The purpose of this search is to prevent harm to police officers by allowing action prior to a crisis stage. See State v. Wade, 390 So.2d 1309, 1312 (La.1980).
The Fourth Amendment demands an independent justification for an officer to have the authority to conduct a *489 frisk because this type of search “constitutes a severe, though brief, intrusion upon cherished personal security.” Terry, 392 U.S. at 24-25, 88 S.Ct. 1868. A lawful detention for questioning does not automatically give the officer authority to conduct a frisk for weapons. See State v. Sims, 02-2208, p. 6 (La.6/27/03), 851 So.2d 1039, 1043 (emphasis added). See also State v. Denis, 96-0956 at p. 7, 691 So.2d at 1298-99.
In order to justify this war-rantless search, the prosecution must show that “a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.” Terry, 392 U.S. at 27, 88 S.Ct. 1868 (emphasis added). Review of the reasonableness of this type of search is also objective. See Boyer, 07-0476 at p. 20, 967 So.2d at 471 (citing Dumas, 00-0862 at p. 2, 786 So.2d at 81). The subjective belief of officers that they are in danger is not relevant. See id.
Similar to the justification for an investigatory stop, an officer must also be able to “point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant” this particular intrusion. Terry, 392 U.S. at 21, 88 S.Ct. 1868. “[C]riminality and weaponry are neither synonymous, nor mutually inclusive. However, because there is often overlap between the two, in many situations the circumstances that justify the stop [may] also warrant the frisk.” Wade, 390 So.2d at 1312. “The officer need not be absolutely certain that the individual is armed.” Terry, 392 U.S. at 27, 88 S.Ct. 1868. See also State v. James, 07-1104, p. 6 (La.App. 4 Cir. 3/5/08), 980 So.2d 750, 754. The officer need only show a “ ‘substantial possibility’ of danger.” Francis, 10-1149 at p. 8, 60 So.3d at 710 (quoting Sims, 02-2208 at p. 3, 851 So.2d at 1043-1044).
Importantly for our purposes, “a search which is reasonable at its inception may [still] violate the Fourth Amendment by virtue of its intolerable intensity and scope.” Terry, 392 U.S. at 18, 88 S.Ct. 1868. This frisk must also be “ ‘reasonably related in scope to the circumstances which justified the interference in the first place.’ ” Francis, 10-1149 at p. 8, 60 So.3d at 710 (quoting Terry, 392 U.S. at 20, 88 S.Ct. 1868). Thus, the search “must be strictly ‘limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.’ ” Dickerson, 508 U.S. at 373, 113 S.Ct. 2130 (citing Terry, 392 U.S. at 26, 88 S.Ct. 1868). This frisk is “not justified by any need to prevent the disappearance or destruction of evidence of crime.” Terry, 392 U.S. at 29, 88 S.Ct. 1868.
We are very “‘sensitive to the danger ... that officers will enlarge a specific authorization, furnished by a warrant or exigency, into the equivalent of a general warrant to rummage and seize at will.’” Dickerson, 508 U.S. at 378, 113 S.Ct. 2130 (quoting Texas v. Brown, 460 U.S. 730, 748, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). Thus, this search is limited to patting down the outer clothing of the suspicious person. See Terry, 392 U.S. at 29, 88 S.Ct. 1868. The officer may not rummage through pockets or under the outer surface of garments until he or she feels and recognizes the weapon to be seized. See id. at 29-30, 88 S.Ct. 1868.
In Dickerson, the U.S. Supreme Court created a limited exception to this steadfast rule known as “plain feel” through analogy to the “plain view” doctrine. 508 U.S. at 374, 113 S.Ct. 2130. The Court stated: “If a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass *490 makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons.” Id. at 375, 113 S.Ct. 2130. See also Boyer, 07-0476 at p. 22, 967 So.2d at 472. This exception allows officers to seize contraband, such as narcotics, during frisks pursuant to Terry stops, see Dappemont, 98-0446 at p. 12, 734 So.2d at 742, provided that the officer has probable cause to believe that the item is contraband prior to its seizure. See Boyer, 967 So.2d at 473. The officer may not, however, seize or examine further an object that is not a weapon or clearly contraband.
|13If the protective search exceeds its permissible scope, it is no longer a valid search and its fruits will be suppressed. See Dickerson, 508 U.S. at 373, 113 S.Ct. 2130 (citing Sibron v. New York, 392 U.S. 40, 65-66, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). Examples of courts suppressing evidence due to officers exceeding the permissible boundaries of these searches are numerous. See State v. James, 99-3304 (La.12/8/00), 795 So.2d 1146 (per curiam) (film canister); State v. Rabon, 00-0935 (La.6/30/00), 764 So.2d 944 (per curiam) (opaque pill bottle); State v. Sheehan, 99-0725 (La.7/2/99), 767 So.2d 1 (per curiam) (cigarette box); Clausen, 97-0885, 697 So.2d 1066 (small wooden box); Dickerson, 508 U.S. 366, 113 S.Ct. 2130 (small lump in jacket pocket); Isidore, 00-2781, 789 So.2d 79 (shaking out baseball cap after removing from person’s head); Dappemont, 98-0446, 734 So.2d 736 (fast food bag protruding from zipper area of pants).
A trial court’s determination regarding a motion to suppress evidence is entitled to great weight and will not be set aside absent an abuse of discretion. See Francis, 10-1149 at p. 5, 60 So.3d at 708. This deference stems from the trial court’s ability to observe witnesses and weigh the credibility of their testimony. See Isidore, 00-2781 at p. 3, 789 So.2d at 82. We only deviate from this deferential standard in our review of a trial judge’s finding of reasonableness under the Fourth Amendment, which requires a de novo review. See Francis, 10-1149 at p. 5, 60 So.3d at 708.
C
In this Part, we apply these guiding precepts to the facts of this case. When Mr. Carter was seized and frisked by the police that evening, he was entitled to the | protection of the Fourth Amendment. See, e.g., Terry, 392 U.S. at 9, 88 5.Ct. 1868.[5] We note that both Mr. Carter and the prosecution agree that the information furnished to the police by Mr. Jones sufficed to establish reasonable suspicion to conduct an investigatory stop but did not establish probable cause for his arrest.[6] Mr. Jones identified Mr. Carter by name and his clothing, and informed the police that Mr. Carter was a drug dealer. This information was sufficient to *491 establish reasonable suspicion that Mr. Carter was committing a crime. Thus, the police were reasonable in briefly stopping Mr. Carter in order to make inquiries aimed at dispelling or confirming their suspicions.
We also note that Mr. Carter and the prosecution agree that the police had sufficient information to justify a limited weapons frisk after their seizure of Mr. Carter. The police were investigating narcotics dealing in an area of the city known for violent crime. Additionally, the police had just arrested another man, Mr. Jones, for possession of a firearm inside the same bar. A reasonably prudent officer in those circumstances would be warranted in his belief that there was a substantial possibility of danger. See Francis, 10-1149 at p. 8, 60 So.3d at 710 (quoting Sims, 02-2208 at p. 3, 851 So.2d at 1043-1044). Thus, the police were justified in frisking Mr. Carter for weapons. During that frisk, however, the police exceeded 11sthe permissible scope of that search. As previously stated, a frisk for weapons pursuant to a Terry stop must be strictly limited to the discovery of weapons and the patting of the outer clothing of the suspicious person.
During the frisk, the police discovered a plastic bag containing narcotics in Mr. Carter’s pants. As this constitutes evidence seized without a warrant, it is the State’s burden to prove its admissibility under La.C.Cr.P. art. 703 D. The officer that seized the evidence, Officer Buckle, did not testify at the hearing on the motions. The prosecution did not establish what he felt during the frisk, whether he construed the bag of drugs to be a weapon of some kind, or whether the bag’s illicit nature was immediately apparent. The state failed to meet its burden of proof by showing that this evidence should be admissible under the “plain feel” exception granted by Dickerson.
From the facts before us and viewing all of the evidence according to the totality of the circumstances, we find that the district judge did not abuse its discretion in granting Mr. Carter’s motion to suppress the evidence seized by Officer Buckle. While we find that the frisk performed by Officer Buckle was justified by an objectively reasonable belief that Mr. Carter posed a danger, the scope of that search exceeded the permissible boundaries of a limited weapons frisk. The frisk was an unreasonable search under the Fourth Amendment.
|1(iDECREE
Having granted a writ of certiorari, we now affirm the district court’s ruling which suppressed the evidence of the illegal narcotics for use at trial. We lift the stay previously issued by us. And we remand the matter to the trial court for further proceedings.
WRIT OF CERTIORARI GRANTED; STAY LIFTED; AFFIRMED AND REMANDED.

. Notably, “[w]hen a conditioned plea is accepted reserving an assignment of error as to a pretrial ruling of this nature, we will assume that the evidence questioned is of this prejudicial nature and will be offered at the trial, unless the record of the plea demonstrates otherwise.” Crosby, 338 So.2d at 591.

. We do not consider the prosecution’s later-filed objections which were first raised in their supplemental brief because such objections were not made at the time of the hearing and are thus not preserved for our review because the district judge was not afforded an opportunity to correct any error which could have been pointed out to him.

. The Fourth Amendment applies to State prosecutions through the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

. The term "search” in this statute should be understood to only allow an intrusion " 'reasonably related in scope to the circumstances which justified the interference in the first place.' ” Francis, 10-1149 at p. 8, 60 So.3d at 710 (quoting Terry, 392 U.S. at 20, 88 S.Ct. 1868). We must "construe statutes so as to preserve their constitutionality, when it is reasonable to do so.” State v. Fleury, 2001-0871 (La.10/16/01), 799 So.2d 468, 472 (citing Moore v. Roemer, 567 So.2d 75, 78 (La.1990); State v. Newton, 328 So.2d 110, 117 (La.1976) (on rehearing)). Reasonable suspicion that a person possesses a dangerous weapon is not a sufficient justification for a full search of the person.

. The prosecution also cites La. R.S. 14:95.4 in this writ application for the proposition that Mr. Carter consented to “a reasonable search of his person for any firearm” upon "entering an alcoholic beverage outlet.” As previously stated, the term "search” in this statute should be understood to only allow an intrusion " 'reasonably related in scope to the circumstances which justified the interference in the first place.’ " Francis, 10-1149 at p. 8, 60 So.3d at 710 (quoting Terry, 392 U.S. at 20, 88 S.Ct. 1868). As the officers in this case only had reasonable suspicion to stop Mr. Carter, their subsequent search could not exceed that permissible scope.

. The trial judge appeared to base his ruling upon the belief that Officer Buckle had no reasonable suspicion to detain Mr. Carter because of the untested veracity of the informer. See Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).