PAUL A. BONIN, Judge.
li During a frisk following a Terry stop, police officers seized cocaine from Jerrold Francis. The officers arrested Mr. Francis for possession of cocaine, a violation of LA. R.S. 40:967 C, and for resisting an officer, a violation of LA. R.S. 14:108. During pretrial proceedings, Mr. Francis filed a motion to suppress the evidence, asserting that the stop-and-frisk was unconstitutional and that the cocaine seized should be excluded from evidence. After the district judge denied his motion, Mr. Francis entered pleas of guilty to both offenses. But he reserved his right to appeal the denial of his motion to suppress the evidence. See State v. Crosby, 338 So.2d 584 (La.1976).
Because the objective circumstances surrounding the officer’s frisk of Mr. Francis do not support a finding that the officer reasonably suspected that Mr. Francis was armed and dangerous, we find that the frisk following the stop was unreasonable and that the trial court abused its discretion in denying the motion to suppress evidence. We accordingly reverse the trial court’s ruling on the motion, vacate Mr. Francis’ guilty pleas, and remand for further proceedings. We explain our reasoning in detail in the following Parts.
J£
Police officers Rodney Brown and Clinton Lawrence were on, as they characterize, proactive patrol[1] late at night near the Iberville Housing Project in downtown New Orleans. They observed Mr. Francis pacing on the sidewalk near a building located at the intersection of Iberville and North Robertson streets. The building at *707 this intersection houses a clinic and a security company — both of which were closed.
Describing himself as “curious” about why Mr. Francis was pacing in front of closed businesses, Officer Brown along with Officer Lawrence exited the police car. They walked over to Mr. Francis to ask him why he was there. As they approached, Officer Brown noticed that Mr. Francis had his right hand in his pocket. He ordered Mr. Francis to remove his hand from his pocket. Mr. Francis complied. Mr. Francis held his hand out in a manner that showed the officers that he was holding a cigarette lighter.
The officers then asked Mr. Francis for some identification, and when he told them that he had none, the officers put him on the car and patted him down. As Officer Lawrence conducted the pat down, he kicked Mr. Francis’ legs further apart, causing Mr. Francis’ body to shift. It was then that Officer Brown noticed that a clear blue plastic bag was in Mr. Francis’ right hand. Officer Brown moved Mr. Francis’ hand and saw that the bag contained six pieces of cocaine. As -the officers were placing Mr. Francis in handcuffs, Mr. Francis attempted to flee— managing to run only a few feet before the officers captured him.
Is At the hearing on the motion to suppress, when asked why he elected to pat down Mr. Francis, Officer Brown said, “he was standing there with his hand in his pocket.” Mr. Francis, however, removed his hand from his pocket when ordered to do so, revealing that he was holding a blue lighter. Officer Brown explained: “We had to check him to see if he had any type of weapons on him. We’re not going to just stand there and interact with somebody when we don’t know if they’re armed.” On cross-examination, Officer Brown noted that it was his standard procedure to pat a person down before speaking to him during a pedestrian check at night and in the dark.
Following the arrest, Officer Brown took Mr. Francis to Central Lockup, where deputies told him that he must first take Mr. Francis to University Hospital for treatment for head injuries he had sustained during his arrest.
II
Before we discuss Mr. Francis’ assignments of error regarding the validity of the Terry stop and frisk, we briefly address an evidentiary matter. Officer Brown, on direct examination, testified that he stopped Mr. Francis near the intersection of Iberville and North Robertson streets. Officer Brown identified this as a “crime area,” and counsel for the defense objected on grounds that the area’s reputation for crime was irrelevant, and counsel orally moved to strike the statement. The trial court sustained the objection but did not rule on the motion to strike.
An individual’s presence, in an area of expected crime, standing alone, is of course insufficient to support a reasonable, particularized suspicion that a person is involved in criminal activity. Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). But we have recognized that the reputation of |4an area is an articulable fact upon which an officer may rely in determining reasonable suspicion. See State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254. Inquiry into the criminal character of an area is a legally relevant contextual consideration when analyzing a Terry stop. Adams v. Williams, 407 U.S. 143, 144, 147-48, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Because Officer Brown’s testimony that the *708 area in question had a reputation for criminal activity was relevant, the trial court should not have sustained the objection. In any event, we note that the trial court later articulated, in stating its reason for denying the motion to suppress, that this incident took place in the Iberville Project. In our review and evaluation of the trial court’s finding of reasonable suspicion, we accept that the stop took place in an area with a reputation for high crime[2] and consider that as one circumstance in the totality of the circumstances surrounding the stop and frisk of Mr. Francis.
Ill
The Fourth Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment, protects the right of the people “against unreasonable searches and seizures.” U.S. Const. Amend. IV; see also Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Similarly, the Louisiana Constitution protects “persons, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.” La. Const. Art. 1, § 5. “Reasonableness is always the touchstone in striking the balance between | legitimate law enforcement concerns, such as officer safety, and protected individual privacy interests.” State v. Bell, 09-574, p. 14 (La. App. 4 Cir. 12/9/09), 28 So.3d 502, 512. Accordingly, our inquiry under the Fourth Amendment always centers on reasonableness. And an appellate court ultimately reviews a finding of reasonableness under the Fourth Amendment de novo standard. See State v. Pham, 01-2199, p. 4 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 218.
Unless justified by narrowly drawn exceptions to the warrant requirement, searches and seizures conducted without warrants issued on probable cause are per se unreasonable. State v. Surtain, 2009-1835, p. 7 (La.3/16/10), 31 So.3d 1037, 1043, citing Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). To enforce the mandates of the Fourth Amendment and La. Const. Art. 1, § 5, evidence recovered pursuant to an unconstitutional search or seizure is inadmissible. Mapp, 367 U.S. at 657, 81 S.Ct. 1684; State v. Hamilton, 2009-2205, p. 3 (La.5/11/10), 36 So.3d 209, 211. At a suppression hearing, the State bears the burden of proving the admissibility of evidence seized without a warrant. La. C.Cr.P. Art. 703 D. Aside from the ultimate determination of reasonableness, a trial court’s determination of a motion to suppress evidence is entitled to great weight and will not be set aside absent an abuse of discretion. See State v. Wells, 2008-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581; see State v. Pham, supra.
With these general Fourth Amendment precepts in mind, we turn now to a specific *709 Fourth Amendment considerations of the stop first and then of the frisk of Mr. Francis.

Jé

“A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him, his name, address, and an explanation of his actions.” LA. C.CR.P. art. 215.1 A; see also Terry, supra. “Reasonable suspicion” sufficient to effect a stop has been defined as something less than probable cause for arrest: a reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. State v. Williams, 07-0700, p. 11 (La.App. 4 Cir. 2/13/08), 977 So.2d 1101, 1111.
In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy it entails and consider the totality of the circumstances in determining whether reasonable suspicion exists. State v. Marzett, 09-1080, pp. 5-6 (La.App. 4 Cir. 6/9/10), 40 So.3d 1204, 1208. The detaining officers must have knowledge of specific articulable facts which, when taken together with rational inferences from those facts, reasonably warrant the stop. Id. The officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable, and deference should be given to the experience of the officers present at the time of the incident. Id. “A hunch or suspicion is simply insufficient to establish reasonable grounds to stop a person.” State v. Lange, 02-0477, p. 7 (La.App. 4 Cir. 11/6/02), 832 So.2d 397, 401.
“The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.” Adams, 407 U.S. at 7145-46, 92 S.Ct. 1921. On the contrary, as the Supreme Court explained in Adams, the Terry case “recognizes that it may be the essence of good police work to adopt an intermediate response.” Id. “A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.” Id.
Here, Officer Brown articulated a minimum of information to sufficiently establish reasonable grounds for the stop. He noted that Mr. Francis was walking back and forth in front of closed businesses at night in an area where crime occurs. Officer Brown did not say that he suspected Mr. Francis was involved in criminal activity; he was simply “curious as to why [Mr. Francis] would be right there.” When we, however, consider the fact that the officers were on proactive patrol late at night, that the stop took place in a high crime area, and that Mr. Francis’ pacing near closed businesses with his hand in his pocket, we are unable to conclude that the trial court abused its discretion in finding under the totality of the circumstances that the officers had reasonable suspicion to warrant their belief that Mr. Francis was involved in (or was about to be involved in) some kind of criminal activity. These circumstances demonstrate at least a minimal level of reasonable suspicion to interfere with Mr. Francis’ freedom of movement and to support a valid stop. Thus, we do not find that the trial court abused its discretion in finding that the officers had reasonable suspicion for the stop.
*710 B
Importantly, we do not confuse the automatic search authorized incident to a lawful arrest as an analogue for the frisk that often accompanies a Terry stop. See United States v. Robinson, 414 U.S. 218, 225, 94 S.Ct. 467, 38 L.Ed.2d 427(1973) (recognizing the “right | swithout a search warrant contemporaneously to search persons lawfully arrested.”). A lawful detention for questioning does not automatically give the officer authority to conduct a pat-down for weapons. State v. Sims, 02-2208, p. 6 (La.6/27/03), 851 So.2d 1039, 1043 (emphasis added). “While it is true that an officer is never justified in conducting a pat-down for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer authority to conduct a pat-down for weapons.” State v. Denis, 96-0956, p. 7 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, 1298-99.
In Sims, the Louisiana Supreme Court explained that the “officer’s suspicion that he is in danger is not reasonable unless the officer can point to particular facts which led him to believe that the individual was armed and dangerous.” Sims, 02-2208, p. 3, 851 So.2d at 1043-44. Additionally, “the officer need not establish that it was more probable than not that the detained individual was armed and dangerous.” Id. Rather, the Louisiana Supreme Court explained, “it is sufficient that the officer establish a “substantial possibility” of danger.” Id. To determine the lawfulness of an officer’s frisk of a suspect, “courts must give due weight, not to an officer’s inchoate and unparticularized suspicion or ‘hunch,’ but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.” Id.
In evaluating the reasonableness of the frisk, we still consider whether an officer’s frisk is “reasonably related in scope to the circumstances which justified the interference in the first place.” Terry, 392 U.S. at 20, 88 S.Ct. 1868. Although we find that the officers had reasonable suspicion to effect the stop, we nonetheless still reverse the trial court’s ruling on the motion to suppress because even if the stop was justified, the frisk which followed was not. The intrusion not only on a citizen’s movement |9but on the citizen’s dignity is qualitatively distinguished when the officer’s interaction intensifies from questioning to placing his hands on the person.
For Fourth Amendment purposes, the line drawn here is drawn on an objective basis and that line may only be crossed by the police officer when that objective basis is clear. As the United States Supreme Court articulated in Terry, “Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger.” Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
If a law enforcement officer has legally stopped a person pursuant to Louisiana Code of Criminal Procedure Article 215.1 A, the officer may frisk the outer clothing of the person if the officer reasonably • suspects that he is in danger. La. C.CR.P. Art. 215.1 B. Additionally, if the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person. Id. To frisk a person who has been detained, there must be some basis for fear for his safety or fear that the suspect is armed. State v. James, 07-1104, p. 6 (La.App. 4 Cir. 3/5/08), 980 So.2d 750, 754. “The officer need not be absolutely certain that the person is armed, but the officer must be warranted *711 in his belief that his safety or that of others is in danger.” Id.
As already stated, the reasonableness of a frisk conducted as part of an otherwise lawful investigatory stop is governed by an objective standard. The Louisiana Supreme Court has observed that, in evaluating an officer’s reasonableness, “[t]he relevant question is not whether the police officer subjectively believes he is in danger, or whether he articulates that subjective belief in his testimony at a suppression hearing.” State v. Dumas, 00-0862, pp. 2-3 (Lag/4/01),10 786 So.2d 80, 81-82. Instead, the standard of an officer’s reasonableness in frisking a detainee is “whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.” Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
In Dumas, the Louisiana Supreme Court approvingly cited Warren LaFave on the point that the test is “an objective rather than a subjective one, just as with the probable cause needed to arrest or search, and thus it is not essential that the officer actually have been in fear.” Warren R. LaFave, Search and Seizure, § 9.5(a), p. 253 (3rd ed.1996). Conversely, an officer who subjectively feels genuine fear upon every encounter would also, without more, fail to justify his search of every person he fears for a weapon. Although we do not require that the officer subjectively feel fear, we nonetheless still require some articulation of specific facts from which we can reasonably infer the danger of the situation or the dangerousness of the person stopped.
“Unless the plain language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A,” we stated in State v. Hughes, “the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based.” State v. Hughes, 99-2554, pp. 7-8 (La.App. 4 Cir. 5/31/00), 765 So.2d 423, 428.
Beyond the facts recited above in Section A, ante, we can find no further support for a reasonable belief that Mr. Francis was armed or otherwise posed a danger. Although there have been cases in the past in which the facts that justify the stop will also justify the frisk, this is not one of those cases. Cf., State v. Mingo, 93-0827, p. 4 (La.App. 1 Cir. 6/24/94), 638 So.2d 1209, 1211. Because the facts | nhere only barely support a minimum level of reasonable suspicion that any criminal activity was afoot, in order to justify the officer’s reasonable belief that Mr. Francis presented a danger, we will require something more in our evaluation of the totality of the circumstances. In this case, the officer did not receive information from a confidential informant that Mr. Francis was involved in illegal activity, cf., State v. Legett, 02-0153, p. 5 (La.App. 4 Cir. 5/22/02), 819 So.2d 1104, 1107, nor did he articulate that he suspected Mr. Francis had some other connection to drugs or drug trafficking which might have supported a reasonable suspicion of danger. Cf., State v. Fortier, 99-0244, p. 7 (La.App. 4 Cir. 1/26/00), 756 So.2d 455, 460. Mr. Francis did not flee at the sight of the officers. Cf., State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989. There is also no evidence that, prior to the frisk, Mr. Francis appeared to be nervous or fidgety. Cf., State v. Francois, 00-1039, pp. 5-6 (La.App. 4 Cir. 1/10/01), 778 So.2d 673, 677-78.
Instead, Officer Brown noted that he frisked Mr. Francis “because he was standing there with his hand in his pocket.” If Mr. Francis had kept his hand in his pocket, a reasonably prudent officer *712 might be concerned that he was concealing a weapon, and this may have sufficiently supported a pat-down, but here, Mr. Francis immediately removed his hand from his pocket when ordered to do so, revealing that he was holding a cigarette lighter. Cf., State v. Boyer, 07-0476, p. 21 (La.10/16/07), 967 So.2d 458, 472.
We begin by deferring to the experience and expertise of an officer effecting a stop and frisk. See Marzett, supra. We also recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. See Denis, 96-0956, p. 7, 691 So.2d at 1299. Here, Officer Brown testified that he has |12been on the police force for three years, but there was no further testimony about the depth or breadth of his experience. In fact, rather than connecting the need for this particular frisk with his own prior experience, Officer Brown instead stated that it was his standard procedure to frisk everyone he approached for every pedestrian encounter that took place at night. His suggestion of an automatic frisking policy is problematic.
From the facts before us and viewing all evidence according to the totality of the circumstances, we find that the trial court abused its discretion in denying Mr. Francis’ motion to suppress evidence. We find no basis for concluding that a reasonable person in the officer’s position would be warranted in the belief that Mr. Francis posed a danger. The frisk here was not based on specific facts that might indicate danger. Indeed, the officers arguably conducted a frisk on something less than a hunch: pursuant to a systematic policy of frisking anyone who is pacing in the nighttime. Such a policy, although it may be efficient, is not constitutional. In this case, the frisk was an unreasonable search under the constitution.
C
We conclude that although the officers had reasonable suspicion for the stop, the officers lacked reasonable suspicion for the frisk of Mr. Francis. Accordingly, the district court abused its discretion in denying the motion to suppress the evidence. We reverse that ruling and grant the motion to suppress. On the basis of the suppression hearing that was held, the discovery of the cocaine immediately resulted from the unlawful frisk and should have been excluded from evidence. See Wong Sun v. U.S., 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We also vacate the plea of guilty to possession of cocaine.
_biv
We now turn to address Mr. Francis’ second assignment of error. Mr. Francis contests his guilty plea for resisting an officer, a violation of La. R.S. 14:108, asserting that, because his detention was illegal, he had a right to resist the officer.
Generally, individuals in Louisiana have the right to resist an unlawful detention, including unconstitutional Terry stops and searches. See State v. Manuel, 06-0486 (La.App. 4 Cir. 11/21/06), 946 So.2d 245, 248; see also La. R.S. 14:108 A (“Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.”) The officers here frisked Mr. Francis without reasonable suspicion to do so.
*713 We understand Mr. Francis’ argument to be that the trial court’s erroneous ruling on his motion to suppress effectively foreclosed his defense to the charge of resisting an officer, a misdemeanor. See La. R.S. 14:108 C and 14:2 A(6). The offense is triable to the judge alone, see La. Const. Art. I, § 17(A) and La.C.Cr.P. Art. 779 B, and the trial judge had already decided the lawfulness of the detention and frisk. Thus, his decision to plead guilty under Crosby and preserve his right to appeal the suppression ruling and, in effect, his guilty plea to resisting an officer. Although a plea of guilty generally waives review of all non-jurisdictional defects in pre-plea proceedings, a plea pursuant to State v. Crosby authorizes appellate review of defects in pre-plea proceedings that are objected to |14at the time of the plea. State v. Sellers, 04-1922, p. 5 (La.App. 4 Cir. 4/20/05), 902 So.2d 418, 421.
Because we conclude that the suppression ruling, based upon the evidence at the suppression hearing, is erroneous, we vacate Mr. Francis’ plea of guilty to the resisting arrest.
REMAND INSTRUCTIONS
Our decision to vacate the guilty pleas entered under Crosby necessitates that we remand the consolidated cases to the trial court for trial. As we have stated, our review in this case only extended to the evidence adduced at the hearing on the motion to suppress. Ordinarily, had Mr. Francis proceeded to trial on the merits, our review of the denial of his motion to suppress would have been expanded to include any additional relevant evidence introduced at trial. See State v. Craft, 03-1852, p. 5 (La.App. 4 Cir. 3/10/04), 870 So.2d 359, 363. Our ruling regarding the motion to suppress does not preclude, upon a showing of good cause, the prosecution requesting that the suppression hearing be re-opened for additional evidence.
DECREE
Accordingly, the trial court ruling denying Jerrold Francis’ motion to suppress is reversed and the motion is granted, the conviction and sentence are vacated and set aside and the case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED
MURRAY, J., Concurs in the Result.
LOMBARD, J., Concurs with Reasons.

. Officer Brown, who testified at the hearing on the motion to suppress, did not define this term, but it is sometimes also known as "preventive patrol.” Preventive patrol purports to increase police presence in areas of expected crime in order to act as a deterrent. As O.W. Wilson, former chief of the Chicago Police Department has said, proactive or preventive patrol "is the only form of police service that directly attempts to eliminate opportunity for misconduct.” The Kansas City Preventive Patrol Experiment: A Summary Report by George L. Kelling, et al. (1974).

. Much has been made of the phrase "high crime area,” but little has been done to define it. High crime areas have been described as "places in which the character of the area gives color to conduct which might not otherwise arouse the suspicion of an officer.” State v. Buckley, 426 So.2d 103, 108 (La.1983). It has also been qualified, as, for example, an "area in which many narcotics arrests have been made.” State v. Barney, 97-777, p. 5 (La.App. 5 Cir. 2/25/98) 708 So.2d 1205, 1207. It can be an area which is "the subject of on-going complaints.” State v. Flagg, 99-1004, p. 9 (La.App. 5 Cir. 4/25/00) 760 So.2d 522, 527. The Louisiana Fifth Circuit Court of Appeal has a practice of taking judicial notice that an area is one of high crime pursuant to LA. C.E. 201. See, e.g., State v. Burns, 04-175, p. 9 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1078; State v. Miskel, 95-584, pp. 7-8 (La.App. 5 Cir. 1/30/96), 668 So.2d 1299, 1303. The First Circuit has done the same. See State v. Sterling, 479 So.2d 641, 643 (La.App. 1st Cir.1985). Some have questioned the utility and legality of an undefined "high crime” inquiry. See, e.g., State v. Cooper, 36,472, p. 4 (La.App. 2 Cir. 10/23/02), 830 So.2d 440, 445, n. 5.