| | | |
|---|---|---|
| **STATE OF LOUISIANA** | * | **NO. 2019-K-0863** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **MICHAEL TATE** | * | **FOURTH CIRCUIT** |
| | * | **STATE OF LOUISIANA** |

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 546-378, SECTION "E"
Honorable Keva M. Landrum-Johnson, Judge
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *
(Court composed of Judge Regina Bartholomew-Woods, Judge Paula A. Brown, Judge Tiffany G. Chase)

**CHASE, J., DISSENTS**

Leon Cannizzaro
DISTRICT ATTORNEY
Scott G. Vincent
Assistant District Attorney
619 S. White Street
New Orleans, LA 70119

COUNSEL FOR THE STATE OF LOUISIANA/APPELLEE

Rachel Shur
Orleans Public Defender
2601 Tulane Avenue, 7th Floor
New Orleans, LA 70119

COUNSEL FOR DEFENDANT/APPELLANT

**WRIT GRANTED
OCTOBER 11, 2019**

Relator, Michael Tate, Defendant in the above-captioned matter, seeks review of the trial court's September 5, 2019 ruling denying his motion to suppress physical evidence. For the reasons that follow, we reverse the ruling of the trial court, and remand this matter for further proceedings.

New Orleans Police Department detectives arrested Relator on June 29, 2019, on Bourbon Street in New Orleans while on proactive patrol. The detectives observed Relator speaking to another individual, Dwayne Boutain, who was hand-rolling cigar paper, which they suspected contained marijuana. Relator walked away from the detectives as they approached with his hands near his waistband. Detectives stopped Relator and conducted a pat-down search, revealing a handgun and pills they believed to be ecstasy. Relator moved to suppress the evidence on the basis that the search was illegal.

The State presented Detective Jordan Sherr to testify at the suppression hearing. Detective Sherr testified to the facts as described above. He also testified that he observed Mr. Boutain preparing the cigar with "vegetable matter" and that "[h]and rolled cigars [are] typically used to ingest marijuana." On cross-examination, he conceded that his report of the incident did not note that he

1

observed such preparation. He further testified that the cigar was not lit, so he did not observe any odor of marijuana.

The trial court denied Relator's motion to suppress. The trial court reasoned that the totality of the circumstances – detectives observing "the marijuana," the Relator's action of walking away upon seeing the detectives, placing his hands by his waist, and refusing to stop at the detectives' commands – justified the detention and search. We review the trial court's ruling for abuse of discretion. *State v. Norals*, 2010-0293, p. 3 (La.App. 4 Cir. 7/30/10), 44 So.3d 907, 909.

While the detectives had probable cause to arrest Relator based upon the results of the search, the issue presented here is whether the detectives possessed reasonable suspicion justifying Relator's detention and frisk. "'Reasonable suspicion' to stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference." *Id.,* 2010-0293, p.4, 44 So.3d at 910. Reasonable suspicion to stop an individual is not the same as reasonable suspicion to search the individual's person. *State v. Francis*, 2010-1149, p. 7 (La.App. 4 Cir. 2/16/11), 60 So.3d 703, 710. "As the United States Supreme Court articulated in *Terry,* 'Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a reasonably prudent man . . . would be warranted in the belief that his safety or that of others was in danger.' *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." *Id.*, 2010-1149, p. 9, 60 So.3d at 710.

Here, reasonable suspicion was predicated on the following: the detectives observing Mr. Boutain rolling a substance in a cigar while Relator spoke to him,

Relator's act of walking away from detectives, and Relator placing his hands near his waistband.

One's act of rolling a cigar is susceptible to both innocent and nefarious explanations. Relator, in his writ application to this court, cited *State v. Davis*, 359 So.2d 986, 989 (La.1978), which addressed this very point:

> The officers testified that [defendant's] physical movements in smoking and discarding the cigarette were not furtive or suspicious. The cigarette was rolled in white cigarette paper in the same manner as a hand-rolled tobacco cigarette. Defense counsel demonstrated on cross-examination of the officers that they could not, at a distance, readily distinguish between tobacco and marijuana hand-rolled cigarettes. The officers testified that as [defendant] passed in front of the patrol car he held the cigarette between his thumb and index finger in his slightly cupped hand, a style of smoking they had observed among some users of marijuana. However, common knowledge and the evidence in this case do not indicate that the mere holding of a hand-rolled cigarette in this manner is a characteristic so restricted to marijuana smokers as to arouse reasonable suspicions. This is particularly so in the instant case in which the defendant, who was riding his bicycle on a public street at 10:00 a. m., reasonably could have cupped his hand to shield his cigarette from the wind.

Similarly, here, there is nothing in Detective Sherr's testimony suggesting that he or the other detectives could distinguish the substance in Mr. Boutain's cigar as either tobacco or marijuana such "to arouse reasonable suspicions." The detectives were within their rights to approach Mr. Boutain in an effort to develop reasonable suspicion, but prior to such additional investigation, reasonable suspicion did not yet exist. Importantly, it is prior to that additional investigation that Relator elected to walk away from the scene and detectives.[1] It was at that time that Relator made some movement with his hands near his waist leading detectives to believe he had a firearm in his possession, but that conclusion was inextricably linked to the detectives' assumptions that Mr. Boutain possessed marijuana.

---

[1] It is not apparent from the record before us whether detectives thereafter discovered marijuana in Mr. Boutain's possession.

3

The State submits that the presence of marijuana itself justified a search pursuant to La.C.Cr.P. art. 215.1(B).[2] In support of what it describes as a "drug-trade-weapons connection," the State cites *State v. Fortier*, 1999-0244, p. 9 (La.App. 4 Cir. 1/26/00), 756 So.2d 455, 461, which reasoned:

> In many instances, the appearance of drug dealing itself is an articulable fact that may support an art. 215.1, subd. B frisk. "We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop (based on reasonable suspicion) relating to drug activities." *State v. Curtis,* 96–1408, pp. 9–10 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1292.

Our jurisprudence indeed recognizes a connection between drugs and weapons, but here, the State has not alleged that Relator was the one using, dealing, or possessing drugs at the relevant time. Instead, Relator was seen doing nothing more than speaking to someone rolling a cigar with an unidentified substance on the busiest and most popular pedestrian street in Louisiana.

---

[2] La.C.Cr.P. art. 215.1 codified the relevant jurisprudence as follows:

Art. 215.1. Temporary questioning of persons in public places; frisk and search for weapons.

> A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
> B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
> C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.

The State also cites to jurisprudence inapplicable under the facts of this case, notably those involving drug raids and the execution of search warrants. We do, however, address the State's contention that authorities may frisk "individuals present at the scene of drug activity, notwithstanding the lack of any illegal conduct observed on the part of the individual frisked." In support, the State cites *State v. Green*, 586 So.2d 639, 640 (La.App. 4 Cir. 1991), which set forth the facts as follows:

> Officer Dukes testified that on December 20, 1990 at about 9:30 p.m. he and Officer Dieck were in uniform on patrol in a marked vehicle. They received a call from the dispatcher relating to a drug deal in the 3600 block of Desire Street. The officers parked the police car and walked around a building in order to approach the suspects without being seen. Officers Thompson and Martin approached from the other side. The area was known for drug trafficking. From about 12 feet away Officer Dukes observed Cornell Williams walk up to a man named Jones with whom the defendant was standing. Williams handed Jones cash and Jones handed Williams a small object.
>
> The officers knew from experience that a drug transaction had occurred. The four officers approached Williams, Jones, and Green and placed them up against the car to "pat down" for safety reasons. The officers asked Williams what he was clenching in his hand. Officer Dieck saw a rock-like substance in Williams' hand. While Green's hands were on the hood of the car, his right hand opened and dropped a rock-like substance. At that point the officers advised Williams, Jones and Green of their rights and arrested them. The rock-like substances tested positive for cocaine.

This Court found the officers' actions proper, reasoning that "[b]ecause the defendant was with Williams and Jones during the drug purchase in a high drug trafficking area, the officers were justified under these circumstances to conduct a pat-down search of the three men." *Id. Green* is distinguishable on its facts, as the officers observed the defendant engaging with others in a scenario highly indicative of drug trafficking. Such is not the case here.

5

For the foregoing reasons, we find that the detectives did not possess reasonable suspicion justifying the detention of Relator, nor did the officers subsequently possess reasonable suspicion to frisk Relator. Accordingly, we grant Relator's writ, reverse the ruling of the trial court, and remand this matter for further proceedings.